LORENZO H. GAMWELL *vs.* THEODORE POMEROY & others.

Berkshire.    Sept. 12. — Nov. 4, 1876.    COLT, J., did not sit.    MORTON & ENDICOTT, JJ., absent.

The stockholders of a manufacturing corporation signed a writing, in which they recited that they " desire and intend to continue the corporate organization," and declared that, "as to creditors of the corporation, we do and shall hold ourselves liable, jointly and severally, as copartners, and such liability shall continue as to each so long as he shall continue a stockholder in said concern, but shall not apply to liability contracted after transfer of his stock." The executors of one of the signers, on the faith of this writing, made a loan to the corporation, taking its note, signed by its treasurer, in return. One of the executors was also a signer of the writing, and the note was transferred to the plaintiff for the purpose of suing thereon. *Held,* that the writing was a collateral promise and not negotiable, and that the plaintiff could not maintain an action at law upon it in his own name against the surviving signers.

CONTRACT against Theodore Pomeroy and Robert Pomeroy, copartners doing business under the name of L. Pomeroy's Sons, Robert Pomeroy, Henry Colt and William F. Bacon. Writ dated February 9, 1874. The declaration was as follows:

" And the plaintiff says the Pittsfield Woollen Company was and is a corporation duly organized under the laws of this state, and for a long time carried on business in Pittsfield, in our county of Berkshire ; that on May 3, 1862, these defendants and one William Pollock, being stockholders in said corporation, and owning all the capital stock thereof, executed and handed to and placed in the Pittsfield Bank a certain paper writing for the use and benefit of all persons who then were or might afterwards become creditors of the said Pittsfield Woollen Company. The following is a copy of said paper writing: ' Whereas the stock of the Pittsfield Woollen Company, a corporation organized un-

der the general law of this State, has all been recently purchased and is now owned by the subscribers, who desire and intend to continue the corporate organization, but not for the purpose of exempting themselves from their individual liability for the debts of the company, now we hereby declare to all whom it may concern, that as to creditors of the corporation we do and shall hold ourselves liable, jointly and severally, as copartners, and such liability shall continue as to each one so long as he shall continue a stockholder in said concern, but shall not apply to liability contracted after transfer of his stock and a certificate thereof shall have been filed in the office of the town clerk of Pittsfield, signed by the clerk of said corporation. Dated at Pittsfield, the 3d day of May, 1862.' .[Signed by William Pollock and the defendants.]

"And the plaintiff says said Pollock died on December 9, 1866, testate, and that on April 4, 1867, the duly appointed executors of the last will and testament of said Pollock lent to the said Pittsfield Woollen Company the sum of ten thousand dollars, and received from said company for the money so lent the promissory note of said company, and the following is a copy of said note and of the indorsements thereon : '$10,000. Pittsfield, Mass., April 4th, 1867. On demand, after date, we promise to pay to the order of Wm. F. Bacon, Treas., ten thousand dollars, value received, at the Pittsfield National Bank. Pittsfield Woollen Co., W. F. Bacon, Treas.' [This note was indorsed, 'Wm. F. Bacon, Treas. Pittsfield Woollen Co.,' and interest was indorsed, at various times, to October 4, 1872.]

"And the plaintiff says that said paper writing at the time of making said loan was unrevoked and in full force, and that said loan was made to said company, as the defendants well knew, by said executors, on the faith and credit of said paper writing and of the binding obligation thereof on these defendants, and of their liability to creditors of the company for the debts of the company as expressed and declared in said paper writing.

"And the plaintiff says he is the holder and owner of said note, and that he acquired the same relying on the contract and obligation of the defendants to creditors of the company, and especially on their liability and obligation to pay the money loaned as aforesaid, agreeably to the terms of said paper writing

" And the plaintiff says said company has never paid said note nor any part of it, though requested, except as indorsed thereon, and that there is a large sum due on said note, and that, in virtue of said paper writing and of the facts hereinbefore alleged, a cause of action has accrued to the plaintiff against these defendants, to have and recover of them the amount due on said note; and the plaintiff says the defendants owe him said amount and interest thereon."

Trial, without a jury, in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions in substance as follows :

The Pittsfield Woollen Company was a corporation duly organized under the laws of this Commonwealth, and carried on business, during the time to which the transactions hereinafter stated relate, in Pittsfield, and its stockholders consisted of the defendants and William Pollock, who died on December 9, 1866, leaving a will, by which William D. F. Manice, James Renfrew, Henry Colt and Samuel W. Bowerman were appointed, and subsequently were qualified and have hitherto acted, as executors. On May 3, 1862, occurred the transaction, stated in the record of said company, a copy of which is printed in the margin.* Immediately after this transaction, the statement and agreement, referred to in said record, and set forth in the declaration, signed by the defendants and by Pollock, was left in the

---

* " At a meeting of the stockholders of the Pittsfield Woollen Co., held in pursuance of adjournment of April 5th, on Saturday, May 3d, at 2 o'clock, P. M., present, Henry Colt, William Pollock, Theo. Pomeroy, Robt. Pomeroy, Jas. D. Colt and W. F. Bacon, the meeting being called to order by the president, a paper was drawn up under the direction of Jas. D. Colt, as counsel, declaring that all the stock of the Pittsfield Woollen Co. had been purchased by the parties subscribing thereto, and setting forth the manner in which they proposed to conduct the future business of the company, and also detailing their individual liability for the debts of the concern, and after a full discussion this paper was adopted as an agreement between the parties.

" And it was voted, that the clerk be directed to record the agreement this day entered into by the same stockholders in reference to their liability for the debts of the corporation.

" Voted, that no shareholder shall transfer his stock in this corporation to any person not a member, without the consent of the other shareholders, without first offering the same on terms equally favorable to some other member of the corporation. Meeting was then dissolved."

keeping of the cashier of the Pittsfield Bank, and passed into the keeping of his successor in the office of cashier, and there remained until, by vote of the directors of said bank, (a copy of which vote is printed in the margin,*) on December 16, 1873, it was delivered to the defendant Theodore Pomeroy, who, with the defendant Colt, were directors of said bank. The bank, on April 4, 1867, held a promissory note of the Pittsfield Woollen Company, due on that day, for the sum of $10,000, given in renewal of a note for the same sum, due on December 1, 1866; and, to enable the treasurer of the Pittsfield Woollen Company to pay said note of $10,000, the defendant Colt, acting as executor of the will of Pollock, lent, of the money of Pollock's estate, $10,000 to the treasurer of the Pittsfield Woollen Company, and received thereupon from said treasurer the promissory note declared on. Bowerman, acting therein as executor of Pollock's will, consented to the making of the loan, and Manice and Renfrew, acting as executors of Pollock's will, having no knowledge of the same until after it was made, acquiesced in the loan. Colt was induced to make, Bowerman to consent to, and Manice and Renfrew to acquiesce in said loan, by their knowledge of the agreement of the stockholders of the Pittsfield Woollen Company, deposited in the Pittsfield Bank, and by their faith in and reliance upon the agreement, as security for the loan. On April 4, 1867, the Pittsfield Woollen Company was indebted to the Pittsfield Bank in the sum of $50,000, or thereabouts, and the bank was asking a reduction of the debt; and of this indebtedness, Colt, as director of the bank and stockholder of the Pittsfield Woollen Company, had knowledge; but there was no evidence at the trial that Bowerman, Manice or Renfrew knew the extent of said indebtedness, although their relation to the estate of Pollock, as holders of the stock of the Pittsfield Woollen Company which Pollock had owned, in their character of executors of Pollock's will, caused them to know the general condition of the Pittsfield Woollen Company as to debts and ability to pay them.

---

* "December 16th, 1873. Voted, that the cashier deliver to Theo. Pomeroy, for the Pittsfield Woollen Co., a certain paper given to this bank as collateral security for loans once made the said Co., signed by Wm. Pollock, L. Pomeroy's Sons, H. Colt and W. F. Bacon."

The judge found that the payment of said sum of $10,000 by Colt, under the circumstances hereinbefore stated, was not, and was not intended to be, by him or by his coexecutors Manice, Bowerman or Renfrew, a contribution by them as executors of Pollock's will, on behalf of the estate of Pollock, to the payment of the indebtedness of the Pittsfield Woollen Company to the Pittsfield Bank, or to any other persons; and ruled that it was not in legal effect such a contribution, or an acknowledgment of the liability of said estate to make such a contribution, under the provisions of the agreement of the stockholders of the Pittsfield Woollen Company, then in the keeping of the Pittsfield Bank.

At the time of Pollock's death in 1866, and subsequently, until its principal property was sold by auction in the summer of 1872, the Pittsfield Woollen Company was in a state of financial embarrassment which ultimately became insolvency, but its debts were paid by the defendants, with the help of the proceeds of its property, the estate of Pollock making no contribution to the payment of such debts, and receiving no part of the proceeds of its property. Between April 4, 1867, and the closing up of the business of the Pittsfield Woollen Company, the executors of Pollock's will, excepting Colt, frequently called upon the Pittsfield Woollen Company to pay the note of $10,000; and the defendants, in reply to such calls, contended that the note was in effect, and should be so treated, given as security for a contribution which had been made on the part of the estate of Pollock to the payment of the debt of the Pittsfield Woollen Company to the Pittsfield Bank, for which, in law and in equity, the estate of Pollock was liable, by reason of Pollock having signed the said agreement jointly with the other stockholders. In the course of such controversy, the defendants, Colt not taking part in the matter, offered, upon the surrender by the executors of Pollock's will of said note of $10,000, to pay them a nominal price for the stock of the company held by the executors as a part of the estate of Pollock, and to save harmless said estate from any further liability to make contribution to the payment of the debts of said company; but the executors, Colt not taking part in the matter as a coexecutor, while agreeing to sell the stock at a nominal price, refused to surrender said note to the defendants, and insisted on its full payment.

At the sale by auction of said Pittsfield Woollen Company's property, in the summer of 1872, the property was sold for $86,000, and that sum was disposed of in paying the debts of the company. In the payment of the debts of said company, Colt received the sum of $21,000, and Theodore Pomeroy the sum of $5000.

During the entire period between April 4, 1867, and the summer of 1872, the time of the sale by auction of the property of the Pittsfield Woollen Company, said company had visible and attachable property largely exceeding in value the sum of $10,000, and the same might have been attached in a sufficient sum to enforce the payment of the note declared on, and this fact was well known during all that period to all of the executors of Pollock's will.

The plaintiff is a counsellor at law, and received this note declared on from the executors of Pollock's will, who to that time had held the note and treated it as a part of the estate of Pollock, and had collected all the interest thereon of the treasurer of said company, William F. Bacon, who paid the same out of the funds of the company within two weeks before this action was brought. The plaintiff had not, when he received the note declared on, and has not had hitherto any absolute property therein, but received and held the same for the purpose only of bringing this action, in view of a supposed legal impediment to the maintenance by the executors, in their own names, of an action against the defendants, one of whom is their coexecutor, upon the note. The plaintiff did not receive, and has not held, said note, and does not prosecute this action for any purpose within the provisions of the Gen. Sts. c. 122, § 6.

Upon finding the facts above stated, the judge ruled that the plaintiff was entitled to recover, and ordered judgment for the plaintiff for the amount of the note and interest. The defendants alleged exceptions.

*H. L. Dawes & T. P. Pingree*, for the defendants.

*M. Wilcox*, for the plaintiff. The paper of May 3, 1862, was of a continuing character, speaking at all times and to all persons concerned, not only to then existing but to subsequent creditors, and may properly be regarded as of the date of each and every transaction, whereby persons became creditors of the

Pittsfield Woollen Company, and as a part and parcel thereof. The note for $10,000, dated April 4, 1867, and the paper of May 3, 1862, may therefore be regarded as one transaction and one instrument, to be treated and construed as one, though written on separate papers, the same as if the undertaking in the paper of May 3 had been written on the back of the note itself. Had it been so written, the signers would have been liable as original promisors, within the principles established in the following cases: *Carver* v. *Warren*, 5 Mass. 545; *White* v. *Howland*, 9 Mass. 314; *Amsbaugh* v. *Gearhart*, 11 Penn. St. 482. See also Story on Notes, § 469. The defendants held out to the world, by the paper of May 3, that the business conducted under the corporate name of the Pittsfield Woollen Company was a mere form; not relied on as a thing of substance; and that though their business would be done under the shadow of the corporate name, yet they were the real actors and the real debtors, as copartners, and in that capacity would be bound and liable.

The promise in the paper of May 3 was unconditional. It was not a guaranty, nor in anywise a collateral undertaking; it was an original promise, as if on the back of the note itself, and a part of it, and to accompany the note, into whosesoever hands it passed. This note, with the obligation of the paper of May 3 attaching to it as part thereof, under the facts stated, passed by delivery to the plaintiff, and invested him with a right of action. *Beekman* v. *Wilson*, 9 Met. 434. *Way* v. *Richardson*, 3 Gray, 412. *Austin* v. *Birchard*, 31 Vt. 589. *Trustees of Free Schools* v. *Flint*, 13 Met. 539, 543. *Flint* v. *Pierce*, 99 Mass. 68, 71.

LORD, J. The plaintiff relies upon an agreement between the parties named therein, made on May 3, 1862. The construction of that agreement most favorable to the plaintiff is, that the parties thereto, being the owners of the entire stock of the Pittsfield Woollen Company, with the assent of the said corporation, (expressed by a vote of the stockholders thereof upon the same,) agreed, so far as the public was concerned, to act as, and assume all the liabilities of, copartners, under the name of the Pittsfield Woollen Company; that although as between themselves, as matter of convenience, they intended to continue to act under their corporate organization, yet as to all the world except themselves they were to be, and to be known as, a copart

nership, doing business under the corporate name as a name of the partnership, with all the liabilities attaching to that relation. Giving to this instrument such construction, then, so long as that relation existed, the parties to the agreement would be liable, not as guarantors, nor in any manner collaterally, but directly and immediately, to any creditor of the concern, as for their own debt. Whether, under such circumstances, those who traded with them would be bound by the special conditions and limitations of such agreement, it is unnecessary to inquire, because it appears that all parties to the negotiation for and loan of the $10,000, which is the subject of this action, had full knowledge of the agreement and its precise terms; and, in fact, both the borrower and the lender of the $10,000 were persons who had actually signed the agreement and were parties thereto. They, therefore, are to be deemed to have had full knowledge of all the terms of the agreement, and of all the limitations therein contained.

The first and most important limitation is, that the agreement is to be binding upon them severally only so long as each should "continue a stockholder in said concern." On December 9, 1866, William Pollock, one of the signers of said agreement, ceased to be a stockholder within the meaning of the agreement; (*Bacon* v. *Pomeroy*, 104 Mass. 577; a decision upon the agreement under consideration;) and Pollock's executors were not liable for any debt contracted subsequently to that date. From that date, the remaining four parties ceased to be the owners of the entire stock of the company; and at the time of the loan of $10,000 were not so the owners of the whole stock. They had no power, therefore, *inter sese*, and without the concurrence of the owners of the stock which had been Pollock's, to make an agreement that the corporate name should be used by them, as a partnership name, by which all the stockholders of the company should be a partnership, with the liabilities of partners, instead of a corporation, with the limited and qualified liabilities of stockholders. From that time forward they were merely stockholders, and their action between themselves could not bind the corporation, except as such action was had at a stockholders' meeting, and by vote. Their right to the use of the corporate name as the name of a private partnership, assuming such right to have originally ex-

isted, ceased from that time; and the promise made in the name of the corporation, while such corporation continued to exist and to do business, must be deemed to be the promise of the corporation. The four surviving parties who signed the agreement are neither in fact nor law the corporation ; and the corporation was neither in fact nor law a partnership. Nor could it be made so even by vote of the stockholders. *Trustees of Free Schools* v. *Flint*, 13 Met. 539. All the parties to the loan of the $10,000 knew that a corporation in fact existed and was doing business ; they all knew, also, of the existence of the agreement. Under these circumstances the borrower gave and the lender received the note of the corporation

The corporation, as such, immediately became liable upon the note as a corporation. The liability of the defendants, if any existed, was an independent and collateral liability. We see nothing in any of the cases cited by the learned counsel for the plaintiff which leads to a contrary result. Indeed, they all go upon the ground that the liability was collateral; and if they have any bearing upon the present case, it is rather to show that there is no collateral liability; but on this we are not called upon now to express, and do not express, an opinion. It is quite clear that the parties all understood the agreement to be collateral. It was executed long before the note. It is not incorporated into the note, nor in any manner referred to in said note. The note given was the note of the Pittsfield Woollen Company ; it was treated as its note ; payments of interest were made by the corporation ; the declaration in this action calls it the note of the corporation, avers that the loan was made to the corporation, and that the corporation had not paid it, nor any part of it, except the interest indorsed thereon, and that, by reason of these facts and of the agreement referred to, a cause of action has accrued to the plaintiff. It is true that the declaration avers that the plaintiff is holder of the note, and acquired it by relying upon the obligation of the defendants. If this were important, the case discloses that he did not purchase the note *bonâ fide*, relying upon any such obligation. That, however, is not the question before us. We decide only that, if the agreement is obligatory, it is only as a collateral and independent agreement. It is an agreement in which he is not named and to which he was not a party

and, long before he became possessed of the note, the agreement had been given up to the parties making it by the custodian of it.   The instrument is in no sense negotiable ; and whatever rights or equities may exist between the parties, no action can be maintained by the present plaintiff, in his own name, at law. The recent decision in the case of *Exchange Bank of St. Louis* v. *Rice*, 107 Mass. 37, is decisive upon this point.

*Exceptions sustained.*