[S. F. No. 6075.    In Bank.—July 6, 1914.]

HUGH W. POSTLETHWAITE, Appellant, v. ISAAC
MINOR, Sr., JOSEPH ANCELL and D. K. MINOR,
Respondents.

PRACTICE—AMENDMENT OF PLEADINGS—DISCRETION OF TRIAL COURT.—
The discretion of the trial court to allow amendments of the plead-
ings is so broad, that its action in allowing an amended answer to
be filed will be disturbed on appeal only upon a distinct showing of
abuse of discretion.

GUARANTY—EXECUTORY AGREEMENT TO INDORSE AND GUARANTY BONDS
—PERFORMANCE OF PRECEDENT CONDITIONS—PRESENT GUARANTY.—
An executory agreement to indorse and guaranty the payment of
certain bonds in the future upon the happening of specified condi-
tions, cannot, upon the performance of such conditions, but in the
absence of actual indorsement of the bonds, be treated as a present
contract of guaranty.

ID.—CONSTRUCTION OF GUARANTY.—Contracts of guaranty create no
liability beyond what is expressed in the terms used as interpreted
by the proper rules of construction.

ID.—GUARANTY MADE IN SEPARATE INSTRUMENT—ASSIGNMENT OF PRIN-
CIPAL OBLIGATIONS DOES NOT CARRY GUARANTY.—A mere holder of
such bonds, who was not interested in such executory agreement for
their guaranty as a party, nor by transfer, assignment, or other-
wise, cannot maintain an action on such agreement. In America
the rule is that the guaranty of a negotiable instrument, made in
a separate instrument, will not pass merely by the transfer of the
negotiable instrument.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, from an order discharg-
ing a writ of attachment, and from an order refusing a new
trial.    Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

John A. Wright, George F. Hutton, and H. F. Peart, for
Appellant.

Frank McGowan, Knight & Heggerty, Gillett & Cutler,
McGowan & Westlake, and Otto C. Gregor, for Respondents.

MELVIN, J.—Plaintiff appeals from a judgment against him, from an order discharging a writ of attachment, and from an order denying his motion for a new trial.

The action was one whereby plaintiff sought to enforce an alleged guaranty by defendants of certain bonds of The Central Casket and Supply Company (a corporation). The court found that eighty-seven of the ninety bonds issued by the Central Casket and Supply Company, together with interest thereon from February 15, 1906, remained unpaid, that there was due to the plaintiff as owner and holder of said bonds something more than fifty-five thousand dollars, but that the defendants did not, nor did either or any of them in any manner guarantee the payment of any of said bonds either on the twenty-first day of June, 1905, the day alleged in the complaint, or at any other time. As learned counsel for appellant aptly phrase it: "The existence or nonexistence of the guaranty is therefore the question which forms the core of the case."

Plaintiff does not assert that the bonds were actually and physically indorsed by the defendant, but his position is that by a certain contract, called in the briefs the "fundamental agreement," in which the defendants promised that they would, under the conditions mentioned therein jointly and severally indorse and guarantee the payment of the bonds, they had become indorsers by virtue of the completion of the contract in all other particulars. The agreement in question was one looking to the formation of The Central Casket and Supply Company. The parties were The California Mercantile Investment Company (party of the first part), Isaac Minor, Sr., Joseph Ancell, and D. K. Minor (parties respectively of the second, third, and fourth parts). To the new enterprise the party of the first part was to contribute all of the assets and goodwill of the Central Hardware and Supply Company of San Francisco, of which it owned all of the capital stock and it was to subscribe for sixty thousand shares of the capital stock of three hundred thousand shares of the par value of one dollar per share. The other parties were to contribute all of the assets and goodwill of the D. K. Minor Company (a corporation) and to subscribe for and take in payment therefor one hundred and forty thousand shares of the capital stock of The Central Casket and Supply Company. It was also agreed that immediately upon the formation of

the new corporation, in addition to delivering sixty thousand shares of its stock to the party of the first part it would issue and deliver its promissory note for twenty-five thousand dollars payable one year after date with interest at the rate of six per cent per annum, and ninety bonds for five hundred dollars each, bearing interest at five per cent per annum. There were other features of the agreement relating to a cash payment by the Minors and Ancell and certain credits to the various parties to be given upon the books of the new corporation, but they need not be detailed here. The fourth paragraph of the fundamental agreement is as follows:

"The parties of the second, third and fourth parts will jointly and severally indorse and guaranty the payment of the said promissory note and bonds of the proposed corporation so to be given to the party of the first part and will waive any and all right and claim upon the party of the first part or its assigns for contribution or liability of any kind to pay any part of the said promissory note or bonds otherwise than out of the assets of the said proposed corporation; and as security for the indorsement and guaranty by the parties of the second, third and fourth parts of the said promissory note and bonds and for the waiver of all claims on the party of the first part or its assigns to pay any part of the said promissory note or bonds otherwise than out of the assets of the proposed corporation the parties of the second, third and fourth parts shall deposit in escrow in the Central Trust Company of California all of the stock of the proposed corporation hereinafter subscribed for by them until the said promissory note and bonds are fully paid without right on the part of the parties of the second, third and fourth parts before then to sell, assign, transfer or hypothecate their said stock unless with the consent in writing of the said party of the first part or its assigns."

Under this agreement the new corporation was formed and to it the assets and goodwill of D. K. Minor Company and The Central Hardware and Supply Company of San Francisco were assigned. The other provisions of the contract were, generally speaking, carried out, but the bonds (which were made payable not to the "party of the first part" but to the Central Trust Company of California or bearer) were not indorsed by the defendants when the said bonds were delivered to the California Mercantile Investment Company and

they never have been so indorsed, although demand has been made by plaintiff that such indorsement be made.

The complaint contains the averment: "That on the 21st day of June in the year 1905, the defendants in writing signed by them jointly and severally guaranteed the payment of all of the said bonds." This is denied by the amended answer and there are a number of separate defenses, some of which were evidently abandoned at the trial. One of these, however, is based upon an alleged want of consideration for the contract of June 21, 1905, for the indorsement of the bonds; another upon alleged waiver of performance by the California Mercantile Investment Company of that part of the fundamental agreement providing for the indorsement of the bonds; and it is also averred that about September 15, 1905, one hundred and forty thousand shares of the capital stock of The Central Casket and Supply Company which had been deposited with the Central Trust Company, together with an indorsed promissory note for twenty-five thousand dollars, payable by the Casket Company to the California Mercantile Investment Company, were taken in full satisfaction by the last-named corporation of the contract of June 21, 1905; and that relying upon such acceptance the Casket Company paid the note with interest. There is a further defense based upon an alleged sale by The Central Casket and Supply Company with the consent of The California Mercantile Investment Company of the former's goodwill and personal property to the Western Casket Company whereby it is alleged the otherwise adequate security of the one hundred and forty thousand shares of stock was rendered valueless. The last special defense is based upon an alleged conveyance in trust of certain real property by The Central Casket and Supply Company to the Central Trust Company of California to secure the payment of the bonds here in suit. It is alleged that neither the plaintiff nor the Investment Company has ever resorted to this security.

Appellant insists that the court erred in permitting the filing of this amended answer at the opening of the trial without permitting him to show that it was sham and false. We perceive no error in this. The discretion of the court to allow amendments is so broad that we would only disturb it upon a distinct showing of abuse of that discretion and none appears here. Nor need we examine minutely all of the sep-

arate defenses, although some of them were sustained by the court, because in our opinion the court correctly interpreted the fundamental agreement as not constituting a guaranty of the bonds by the defendants and as not being in any manner available to the plaintiff who was not a party thereto nor one having capacity to sue thereunder by reason of any assignment or transfer of any interest therein or otherwise.

An examination of the fourth paragraph of the fundamental agreement quoted above will disclose the fact that it is entirely executory and that it contemplates a future guaranty of the bonds in a certain manner, that is by indorsement. Section 3109 of the Civil Code provides: "One who agrees to indorse a negotiable instrument is bound to write his signature upon the back of the instrument, if there is sufficient space thereon for that purpose." It was unquestionably the intention of all of the parties to the fundamental agreement that the note and the bonds mentioned therein should be actually indorsed. The former was indorsed. The bonds which were prepared by the secretary of The California Mercantile Investment Company had a form of indorsement printed upon each of them. There was some evidence that when the bonds were tendered for indorsement, Mr. Isaac Minor, Sr., in the presence of plaintiff, of Mr. Barnett, secretary of the Investment Company, and of others, including Mr. Ancell and Mr. D. K. Minor, flatly refused to indorse the bonds. The other defendants did not indorse them and as late as November 4, 1907, plaintiff wrote to Mr. Isaac Minor, Sr., demanding that he do so. In that letter it is also suggested that there may be a cause of action for damages against defendants by the Investment Company. Obviously there could be no tenable action for damages if the existing contract was as good as a physical indorsement. All of these things indicate that the parties to the contract contemplated some future act to be done in a particular manner. It is plain that the contract is not a present guaranty and therefore not corresponding to the one upon which plaintiff declares. (*Johnson* v. *Moss,* 45 Cal. 517; *M'Iver* v. *Richardson,* 1 M. & S. 557; note to *Lanusse* v. *Barker,* 16 U. S. (3 Wheat.) *148, [4 L. Ed. 343]; *Stafford* v. *Low,* 16 Johns. (N. Y.) 68; *Stockbridge* v. *Schoonmaker,* 45 Barb. (N. Y.) 105.) Contracts of guaranty create no liability beyond what is expressed in the terms used as interpreted by the proper rules of construction. (Baylies on

Sureties, 146.) Words in a contract of suretyship are not to be interpreted save in their ordinary popular sense. (*Hewlett* v. *Beede*, 2 Cal. App. 565, [83 Pac. 1086]; *Barrett-Hicks Co.* v. *Glas*, 9 Cal. App. 497, [99 Pac. 856].) If defendants failed in any of their promises under the fundamental agreement the remedy of the party of the first part to that contract was by a suit for specific performance or other appropriate action based upon the agreement itself or the breach thereof. If they had failed, for example, to pay the money mentioned in the fundamental agreement or to assign their interest in the D. K. Minor Company such would have been the remedy. We do not see how a different rule applies to their failure, if any, to meet the requirement for the indorsement and guaranty of the bonds.

Not being a party to said contract nor interested in it by transfer, assignment, or otherwise, the plaintiff cannot maintain this action. The rule on this subject is expressed as follows in 7 Cyc. 542: "That the guaranty of a note or bill made in a separate instrument will pass by the transfer of the note or bill has been held in England but American authorities have held to the contrary." (See *Gamwell* v. *Pomeroy*, 121 Mass. 215; *Watson's Executors* v. *McLaren*, 19 Wend. (N. Y.) 561; *McLaren* v. *Watson's Executors*, 26 Wend. (N. Y.) 430, [37 Am. Dec. 260].) In *McLaren* v. *Watson's Executors*, Chancellor Walworth said: "The testator in this case, by a separate and distinct instrument, which contained no words of negotiability, and was not indorsed or written upon the note, guaranteed the payment of a note at sixty days. . . . But to make a guaranty negotiable as a part of the note to which it relates, it must be *on* the note itself, or at least it must be *annexed* to it; in the nature of *un allonge* or ekeing out of the paper upon which the note is written."

The general rule is that an action against a guarantor must be brought specially upon the contract of guaranty itself. (20 Cyc. 1482.)

It follows that the judgment of the lower court must be sustained upon the broad general grounds above discussed and this makes it unnecessary to review the other defenses which were also recognized as sufficient by that tribunal. Nor need we consider matters of alleged error having reference to aspects of the case which we have not discussed. (*Bancroft* v.

*Haslett,* 106 Cal. 153, [39 Pac. 602]; *Dyer* v. *Brogan,* 70 Cal.
139, [11 Pac. 589]; *Malone* v. *County of Del Norte,* 77 Cal.
218, [19 Pac. 422]; *McCourtney* v. *Fortune,* 57 Cal. 619.)

The judgment and orders from which plaintiff has ap-
pealed are affirmed.

Lorigan, J., Sloss, J., and Angellotti, J., concurred.

SHAW, J., dissenting:—I dissent. The agreement to
"indorse and guaranty the *payment* of the said promissory
note and bonds" became a present guaranty of payment as
soon as the transaction was closed by the formation of the new
corporation, the turning over by the Mercantile Company of
all its business and property to said new corporation and the
issuance of the bonds of the new corporation to the Mercan-
tile Company. The making of the agreement in this form
was an offer to guarantee the bonds. The turning over of
the property and the issuance of the bonds, as agreed, was an
acceptance of the offer, and it put the guaranty in force at
once as a binding contract. I do not think there is any dis-
agreement in the authorities on this point, with respect to the
agreement to guaranty. (See *Bishop* v. *Eaton,* 161 Mass. 496,
[42 Am. St. Rep. 437, 37 N. E. 665]; *Petty* v. *Gacking,*
97 Ark. 217, [33 L. R. A. (N. S.) 175, 133 S. W. 832]; *James*
v. *E. G. Lyonds Co.,* 134 Cal. 191, [66 Pac. 210].)

The last cited case was so held because of the section of the
Civil Code (3197) covering a promise to accept a bill of ex-
change, and it may not be authority directly to the point above
stated. But it cites the common-law rule as the foundation
of the section. It does not derive its force from the code
entirely, and the other cases cited refer to the other classes of
cases similar to the case at bar.

It is not necessary to hold that the same effect follows with
regard to the agreement to "indorse" the bonds. An indorse-
ment, in the strict sense, is a technical transaction, doable
only by writing the indorser's name on the back of the instru-
ment, or on an *allonge* attached to it. There is some conflict
of authority, even where the consideration has passed, over the
question whether one can be sued in equity as an indorser if
he has merely signed an agreement to indorse. But it is uni-
versally agreed that in such a case he is liable for the damages

for the breach of contract, if he fails or refuses to make the indorsement.

Henshaw, J., concurred.

Rehearing denied.