[Sac. No. 2663. In Bank.—August 26, 1919.]

G. F. SLANKARD, Respondent, v. WILLIAM B. WAGNON, Appellant.

[1] VENDOR AND VENDEE—PURCHASE OF LAND IN POSSESSION OF ANOTHER — DUTY OF VENDEE — WHEN RULE INAPPLICABLE.—The rule that a party who buys land in the possession of another must ascertain the rights of the person in possession, or he buys the land at his peril without making such investigation, is not applicable where the purchaser was not informed that anyone was in possession of any part of the land that he was buying.

[2] ID.—ACTION FOR BREACH OF CONTRACT—INDEMNIFICATION FOR SHORTAGE IN ACREAGE OF CONVEYED LAND—EVIDENCE—IDENTIFICATION OF LAND—ORAL TESTIMONY.—In an action for damages for breach of a contract whereby defendant had promised to indemnify plaintiff for a shortage in the acreage of a tract of land sold by defendant to plaintiff and conveyed on defendant's account to plaintiff by a third party with whom defendant had a contract to purchase as a portion of a larger tract, it was proper to show the circumstances attending, surrounding, or explaining the execution of the contract, and the admission of oral testimony explaining the

intention of the parties regarding the land agreed to be conveyed and identifying the land was not a variation of the terms of a written contract by parol.

[3] ID.—LAND OUTSIDE OF AGREED BOUNDARIES—OFFER OF RESTORA-TION IMMATERIAL.—In such action, it was immaterial that plaintiff did not offer to restore to defendant the former's title, if any, in and to the land outside the agreed boundaries, where it was not shown that defendant completed his purchase from the third party, or that he would be entitled in any event to a quitclaim deed to that part of the property deeded to plaintiff but never possessed by him.

[4] ID.—FINDING—STATEMENT OF FACTS AND REASONING OF COURT—LACK OF UNCERTAINTY.—A finding in such action which contains a clear statement of the facts and of the reasoning of the court cannot be said to be argumentative and uncertain.

[5] PLEADINGS — AMENDMENTS — DISCRETION — APPEAL. — Amendments to pleadings and the filing of new pleadings are so thoroughly within the discretion of the superior court that the appellate court will not disturb the rulings except in case of evident abuse of discretion.

[6] ACTION FOR BREACH OF CONTRACT—REFUSAL OF PERMISSION TO FILE CROSS-COMPLAINT—DISCRETION NOT ABUSED.—It was not an abuse of discretion after the testimony had been taken and during the progress of the argument in such an action to refuse the defendant permission to file a cross-complaint for a rescission of the indemnity contract, in view of the defendant's knowledge before the trial of all of the circumstances surrounding and preceding the execution of the contract.

[7] ID.—EVIDENCE—OFFER OF COMPROMISE—LACK OF PREJUDICE.—In such action, error in admitting testimony tending to show an offer of compromise on the part of defendant was without injury, since the action was based upon the written contract and that instrument was neither altered nor strengthened by defendant's subsequent belief that he was or was not bound by its terms.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sterling Carr for Appellant.

McCoy & Gans for Respondent.

MELVIN, J.—Plaintiff sued successfully for damages on account of a breach of a certain contract whereby defendant

had promised to indemnify him for a shortage in the acreage of a tract of land in Tehama County sold by Mr. Wagnon to plaintiff and conveyed on defendant's account to Mr. Slankard by one H. G. Stevenson.

There is little conflict with reference to the facts, which are, substantially, as follows:

Defendant had a contract for the purchase of a tract of 515 acres from Mr. Stevenson. On August 2, 1913, the parties hereto entered into a written agreement for the purchase by plaintiff of a portion of the 515 acres and in the fulfillment of that contract defendant Wagnon caused the owner to make a deed to plaintiff Slankard. The property was described in said deed as follows:

"Lots 1, 2, 3 and 4 of Block 31; Lots 5, 6, 7 and 8 of Block 30; Lots 5, 6, 7 and 8 of Block 29; Lots 1, 2, 3 and 4 of Block 32; and the westerly 456 feet of lots 6 and 7 of Block 28, and the westerly 456 feet of lots 2, 3, 6 and 7 of Block 33, as the said lots and block are laid out, designated and delineated upon a certain map entitled 'Richfield Colony Tehama County,' surveyed by H. C. Shackelford, licensed surveyor, filed in the County Recorder's office, of Tehama County February 6th, 1899. Containing 215 acres, more or less."

Before closing the transaction of the purchase of the land from Stevenson, the defendant engaged a surveyor to run the lines of the property. Owing to the shortness of time in which he was required to report, the surveyor did not promise absolute accuracy, but agreed to do his best. He reported, soon afterward, that the property described in the contract with Stevenson was fifty-nine acres short of the amount agreed to be conveyed. Believing that the land conveyed to Slankard was short of the acreage specified in the deed, Mr. Wagnon sought an interview with Mr. Slankard. Their negotiations at that time resulted in the written agreement upon which this action was subsequently based. That contract, dated August 31, 1914, recites that Wagnon had agreed to convey to Slankard the most westerly 215 acres of the land which Stevenson had promised to sell to the former; that Wagnon had caused Stevenson to give the former's grantee a deed which was supposed to convey the most westerly 215 acres of said land; that subsequently it appeared that the land described in the deed did not contain 215 acres; that Wagnon, not having received a deed from Stevenson, was un-

able then to make good the shortage; that a suit was pending in the superior court by Wagnon against Stevenson and wife for the purpose of compelling conveyance of all the land described in the contract of May 22, 1913, between said Stevenson and said Wagnon; and that Wagnon desired "to secure said G. F. Slankard in the conveyance of said remaining fifty-nine (59) acres of land in case he, the said William B. Wagnon, obtains the same from said H. G. Stevenson, or in lieu thereof to properly indemnify said G. F. Slankard for such shortage." In consideration of these premises and of certain covenants of the party of the second part (Slankard) and for other good and valuable considerations, the party of the first part (Wagnon) covenanted and agreed in the event of full recovery in his action against the Stevensons to convey to Slankard within two months "the remaining fifty-nine (59) acres of the land described and referred to in said contract of August 2, 1913, between said William B. Wagnon and said G. F. Slankard, said land to be free and clear from all encumbrances or liens of any nature whatsoever," or in lieu thereof certain described lots situated in the tract known as the Corning Irrigated Farms.

The party of the second part (Slankard), in consideration of the premises, of the covenants of the first party and the performance thereof, and for other good and valuable considerations, agreed to forbear from bringing any suit upon his previous contract with Wagnon or for the recovery of the lands therein described or for the moneys therein specified until two months after the entry of judgment in the suit by Wagnon against the Stevensons.

It was also agreed that in the event of a compromise of that litigation, William B. Wagnon would immediately convey to G. F. Slankard the fifty-nine acres "constituting the remainder of the land referred to in said contract" of August 2, 1913, or in lieu thereof the specified lots in Corning Irrigated Farms.

There was a settlement of the lawsuit of Wagnon against Stevenson and wife, but he refused to comply with the terms of the agreement of August 31, 1914. The result was this suit, based upon the alleged breach of that agreement by the defendant.

By his answer defendant admitted the execution of the agreement of August 31, 1914, but asserted that the informa-

tion upon which he relied in making that contract was erroneous. It was averred in the answer that plaintiff did receive and then held 215 acres of land—all that was called for in the deed from Stevenson. It was further alleged that the deed from Stevenson was a warranty deed; that it was accepted by plaintiff in full performance of defendant's contract of sale, and that plaintiff's remedy, if the actual land received by him was less than that for which the deed was given, was against Stevenson. There was no prayer for the cancellation of the agreement of August 31, 1914, nor for its amendment.

Upon the issues thus joined the cause was tried before the court, without a jury, and judgment for plaintiff in the sum of $4,987.65, with interest, was given.

The appellant denies that there was sufficient evidence to support four certain findings. Another finding is attacked as uncertain and argumentative and the evidence in support of it is declared to be inadmissible, but appellant contends that, even if it was properly admitted, the conclusion drawn from it is erroneous. Error is also predicated upon the admission of testimony regarding offers of compromise and upon the court's refusal of defendant's request for permission to file a cross-complaint.

Finding No. 10, one of those attacked by appellant, was to the effect "that the property conveyed to plaintiff by the Stevenson deed was 44.24 acres short, and that plaintiff does not now hold any greater acreage than 170.76 acres." The other questioned findings are of like import. The theory upon which these findings and, indeed, all the material ones were made may be best understood by reading the following paragraphs from the clear and logical opinion of Judge Ellison, who tried the case:

"From the testimony introduced and the measurements made by certain surveyors employed for that purpose, it must be held that the calls in the deed from Stevenson to the plaintiff, when measured out upon the ground, make an area of 215 acres, provided the section lines are where they locate them.

"If this were all of the case, it would seem that the defendant would be entitled to a judgment, but the fact, as disclosed by the evidence, is that before the plaintiff contracted to buy the 215 acres he was taken upon the ground by the

defendant Wagnon, and thereon the westerly boundary of the land which he contracted to sell to him was pointed out to him as being a fence running north and south. The land east of this north and south fence deeded to the plaintiff does not contain 215 acres.

"A plat of the subdivision showing the land described in the deed to the plaintiff, when placed upon the ground, would seem to run some distance westerly of this fence, to what is claimed to be the section lines. It is this land between the fence that was pointed out and the so-called location of the section lines that caused the dispute between the parties.

"It sufficiently appears from the testimony that at the time the deed was made to the plaintiff, and now, the land west of this fence, and between it and what is supposed to be the section lines, was in the possession of other parties, and had been for a great many years, they claiming to be the owners thereof and that said fence was the easterly boundary line of their lands.

"When the contract of August 31, 1914, was entered into it was clearly the belief of both the plaintiff and defendant that the westerly boundary line of the land deeded to the plaintiff was this fence, and it was clearly their understanding that the land easterly of the fence deeded to the plaintiff contained 59 or thereabouts acres less than the amount agreed to be conveyed to him, to wit, 215 acres, and with this knowledge the contract of August 31, 1914, was entered into.

"It is now claimed by the defendant that as the calls in the plaintiff's deed extend westerly from the fence far enough to make 215 acres that he has received from the defendant all that he was entitled to. But it was evidently not the intention of the parties in executing the contract of August 31, 1914, to put the plaintiff to the expense or trouble of bringing litigation against the occupants of the land west of the fence to recover the same. The defendant definitely contracted to convey to him fifty-nine acres more land than he had received, or in lieu thereof to convey him certain lots. He has done neither.

[1] "The rule is invoked that a party who buys land in the possession of another must ascertain the rights of the person in possession, or buys the land at his peril without making such investigation. But this rule is not applicable to this case, because the plaintiff was not informed that any-

one was in possession of any part of the land that he was buying. In fact, no one was in possession, so far as the evidence shows, of any of the property east of the fence referred to, and no intimation was made to him that he was buying any land west of the fence, but the contrary was stated. Hence he was under no obligations to make any inquiries as to the ownership or possession of the lands lying west of the fence.

"Interpreted in the light of all the facts and circumstances of the case, the defendant's contract with the plaintiff was to convey to him 215 acres lying easterly of the fence that was pointed out to him as the westerly boundary of the land that he was to buy, and it was not contemplated or expected that he should bring any suits to recover any lands lying west of said fence, or make any effort to take possession of the same. And it was in the light of this situation that the defendant agreed that upon the determination or compromise of the suit which he had brought against Mr. Stevenson he would make a conveyance to the plaintiff of fifty-nine acres of land, or in lieu thereof convey to him the lots in the Corning Irrigated Farms tract.

"The contract between the parties is in writing, and is supported by an adequate consideration, to wit, the mutual promises of the parties and the settlement of a controversy then existing between them as to the acreage the plaintiff was to receive compared with the acreage he had received, the consideration on the part of the plaintiff being that he would forbear to bring any suit against the defendant until the final determination or compromise of the suit of Wagnon against Stevenson. This the plaintiff has done, as is alleged in his complaint and admitted on the trial, and the contract, so far as he is concerned, is fully executed, and the defendant has received the consideration therefor, to wit, the forbearance to bring any suit."

[2] But it is earnestly asserted that the oral statements of defendant with reference to the location of the fence upon the westerly boundary of the land were not admissible because their effect was to vary by parol the terms of a written contract. These statements were not admitted, however, for any such purpose. It is to be remembered that this action was based not upon the original contract of sale, but upon the later compromise agreement. It was proper to show the circumstances attending, surrounding, or explaining its execu-

tion. There was, perhaps, a mutual mistake of both parties to the agreement regarding the paper title—that is to say, the area included within the description in the deed; but there was no mistake about the land actually occupied by the plaintiff and the fact that it was far short of containing 215 acres. This shortage gives the reason for the contract of August 31, 1914. The oral testimony explains the intention of both Wagnon and Slankard regarding the land agreed to be conveyed, and it also identifies the said land. The written instrument of August 2, 1913, and the deed from the Stevensons to Slankard were varied (so far as it lay in Wagnon's and Slankard's power so to vary them) by the agreement of August 31, 1914. It is by this last specified instrument and not by the parol testimony that the terms of those instruments were changed, or, rather, superseded. The authorities cited by appellant upon the subject of attempted variation of written agreements by oral testimony are consequently not in point.

[3] Nor was there any significance in the fact that plaintiff did not offer to restore to defendant the former's title, if any, in and to the land to the west of the fence. It does not appear that Wagnon completed his purchase from the Stevensons nor that he would be entitled in any event to a quitclaim deed to that part of the property deeded to Slankard but never possessed by him.

The other finding attacked by the appellant is the one numbered 15. That finding is one whereby it is set forth that at the date of the execution of the original contract of sale between Wagnon and Slankard "it was the understanding and belief of both parties thereto that the westerly line of the 215 acre tract contracted to be sold to the plaintiff by the defendant was certain old established fences running north and south. That at said time all of the lands lying west of said fence lines were in the possession of other persons claiming said fence lines as the eastern boundaries of their lands, and they had been so in possession and so claiming for many years." The finding then sets out the going of plaintiff upon the land with defendant and the latter's act of pointing out the fences as the western boundary of the land to be sold, and, further, that "the land contracted to be sold to said plaintiff and which was deeded to him by said H. G. Stevenson and wife does not contain 215 acres, if said fence lines

were the western boundary thereof, but it contained 44.24 acres less than 215 acres. That it was by reason of these conditions that said defendant herein brought the suit against said Stevenson and wife referred to in said 'Exhibit B' [the contract dated August 31, 1914], and while said suit was pending said 'Exhibit B' was executed. That it is true that if the western line of the land conveyed to plaintiff herein by said Stevenson and wife can be placed west of the said fence lines and on certain section lines, he would then have title to 215 acres of land, but all of the land west of the said fence lines would be of lands in the possession of other persons claiming to own the same and with no certainty that 'they can be dispossessed by litigation, or otherwise. That it was to meet this situation that said 'Exhibit B' was executed. That said 'Exhibit B' was not executed by reason of any mistake on the part of the defendant herein, nor by reason of any mistake on the part of the plaintiff herein, but it was executed for a valuable consideration which has been fully executed by the said plaintiff and for the purpose of placing upon said defendant the burden and duty of securing title to the additional 44.24 acres of land comprising said shortage, so that said plaintiff would have the beneficial use and enjoyment thereof, or failing to convey the same to him, then to convey to him the other lands described in said 'Exhibit B.'"

[4] We fail to agree with appellant in his statement that this finding is uncertain and argumentative. On the contrary, it is a clear statement of the facts and of the reasoning of the court as given also in the opinion which we have quoted above.

Nor is the objection to the evidence upon which finding No. 15 is based a valid one. It is aimed particularly at the statements of Mr. Slankard that Mr. Wagnon and a surveyor both pointed out the old fence as being on the western boundary of the land. In the first place, it appears that there was no objection to this line of testimony until all of the essentials had been twice stated by the witness. Then objection was made to a recapitulating question involving the very matter regarding which the witness had spoken without objection. The basis of the objection was that the parol statement tended to vary the terms of the written agreement. This was not a tenable objection for reasons which we have heretofore discussed.

Finding No. 15 is also supported by the evidence which clearly showed the understanding of the contracting parties that the fence marked the western property line and that "Exhibit B" was not executed solely by reason of this mistake but also for the valuable consideration which had been subsequently fully executed by plaintiff.

The conclusion of law based upon finding No. 15 is declared by appellant to be erroneous. Appellant cites authorities holding that acquiescence in a wrong boundary is treated as a mistake when the true boundary may be ascertained by a deed and neither party is estopped from claiming the true line. But this is not a controversy between coterminous owners and the authorities invoked are not applicable. Mr. Wagnon had pointed out to his vendee certain lands east of a certain fence and had made a contract to sell said lands. Later he learned that these lands did not contain the represented area and he made a new agreement, supported by a valuable consideration, that he would make the shortage good. With all of the conditions of this agreement plaintiff complied.

During the trial the court made a ruling that if plaintiff should prevail in the action, the measure of damages would be the value of the lots in the Corning Irrigated Farms, rather than that of the acreage in the other tract. Plaintiff thereupon asked and was given permission to amend his complaint so that it should contain an allegation of the area and the market value of the said lots. Defendant specifically waived objection to such amendment. After the testimony had been taken and during the progress of the argument the following occurred, as shown by the record:

"Mr. McCoy: (Counsel for plaintiff.)  I forgot to offer this morning that amendment.

"The Court: All right.

"Mr. Carr: (Counsel for defendant.)  We will have time, I presume, to answer this?

"Mr. McCoy: Well, yes, you can have time, or you can consider it answered.

"Mr. Carr: And I wish at this time—I overlooked it—to file a cross-complaint for the rescinding of this contract.

"Mr. McCoy: The evidence is all in, and we are arguing the case, and the case has been tried on the issues made, and we shall object to the filing of a cross-complaint.

"Mr. Carr: My cross-complaint would be for the rescinding of the contract, 'Exhibit B,' and I will consider it denied.

"The Court: I don't think I will permit the cross-complaint to be filed at this late stage of the case.

"Mr. Carr: At this time may it be stipulated that there is a denial of the value of this land?

"The Court: It is denied it has any value exceeding twenty-five dollars an acre?

"Mr. Carr: Yes.

"The Court: All right."

Appellant now insists that he was refused permission to amend his answer and to file a cross-complaint and that such refusal was error necessitating reversal of the judgment, citing in that behalf *Third Street Improvement Co.* v. *McLelland,* 23 Cal. App. 369, [137 Pac. 1089]. It will be apparent at once that defendant was only refused permission to file a cross-complaint and that the amended complaint was deemed answered by stipulation or understanding that defendant denied a greater value than $25 an acre for the lots in question. [5] Amendments to pleadings and the filing of new pleadings are so thoroughly within the discretion of the superior court that this court is slow to hold as serious error a refusal to permit a change in the theory of a defense or a case for plaintiff at the eleventh hour. On appeal this discretion of the court in which the trial took place either in granting or refusing permission to file new pleadings will not be disturbed except in case of evident abuse thereof. (21 R. C. L. 573; *Hawthorne* v. *Siegel,* 88 Cal. 159, [22 Am. St. Rep. 291, 25 Pac. 1114]; *Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282, [71 Am. St. Rep. 58, 57 Pac. 84]; *Dunphy* v. *Dunphy,* 161 Cal. 380, [Ann. Cas. 1913B, 1230, 38 L. R. A. (N. S.) 818, 119 Pac. 512]; *Postlethwaite* v. *Minor,* 168 Cal. 227, [142 Pac. 55].) [6] We find no abuse of discretion in the ruling here attacked. In this case the defendant knew, long before he went to trial, that the deed to plaintiff, by its terms, included 215 acres. He knew all of the circumstances surrounding and preceding the execution of the last agreement with plaintiff, yet he did not ask for a rescission thereof until after he had put in all of his evidence and rested. In the case cited by appellant the facts were quite different, for there it appeared that at the trial a circumstance most essential to plaintiff's cause of action, namely, a mistake consist-

CLXXXI Cal.—10

ing of defendant's failure to give it a proper credit was discovered during the trial. It was there properly held that the court abused its discretion in refusing plaintiff's request to amend in accordance with the facts.

[7] Finally, appellant contends that the court erred in admitting testimony tending to show an offer of compromise on his part. Plaintiff testified that defendant had called upon him and in answer to the question, "What did he say?" replied: "He said he would fix it up with me and give me the land when Mr. Crittenden got back from New York. I waited on him something like—well, until that date I brought suit there, and I didn't even hear nothing from any of them, and so I come up here and brought the suit. And, in fact, I wrote him a couple of letters, and he has never answered them." The objection to this testimony probably should have been sustained, but it did not, accurately speaking, amount to an offer of compromise, but merely to a declaration that defendant felt himself at that time bound by his written contract. However, treating it as an offer of compromise and objectionable under the authority of *Scott* v. *Wood,* 81 Cal. 398, [22 Pac. 871], we do not see how plaintiff was injured by its admission. The action was based upon the written contract, and that instrument was neither altered nor strengthened by defendant's subsequent belief either that he was or was not bound by its terms.

The judgment is affirmed.

Shaw, J., Lennon, J., Wilbur, J., Olney, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.