[L.A. No. 30711. Aug. 10, 1978.]

WILLIAM M. BULLIS, as Trustee, etc., et al.,
Plaintiffs and Respondents, v.
SECURITY PACIFIC NATIONAL BANK,
Defendant and Appellant.

## COUNSEL

Sheppard, Mullin, Richter & Hampton, Pierce T. Selwood and Thomas C. Nelson for Defendant and Appellant.

Schurmer, Drane, Bullis & McCarthy, Walter H. Drane, Ellis J. Horvitz and Arthur E. Schwimmer for Plaintiff and Respondent.

## OPINION

**BIRD, C. J.**—Security Pacific National Bank appeals a judgment for damages in favor of respondents, heirs of the estate of Florence McNaghten. This court must decide whether a bank's failure to require the signatures of both of an estate's co-executors for withdrawals from an estate account was sufficient to hold the bank liable for misappropriations from that account by one of the executors.

I

Florence Edna Letts McNaghten died in July 1966, having named Ann McNaghten Booth, decedent's daughter, and Edward Lampe, decedent's long-time financial advisor and accountant, as co-executors to administer

her estate. Letters testamentary were subsequently issued to them by the probate court.

In August 1966, Booth and Lampe decided to open a checking account for the estate, but failed to discuss whether the signatures of one or both executors would be required to effect withdrawals. Lampe volunteered to open the account. He went to Security Pacific National Bank and presented a certified copy of the letters testamentary appointing Booth and himself as co-executors. Lampe then signed a signature card establishing a checking account for the "Estate of Edna L. McNaghten." A second card was mailed to Booth for her signature. Lampe did not discuss with any bank official whether one or both signatures would be necessary to make withdrawals.

A bank official wrote on Lampe's card that he was a "coexecutor." Booth's name was inserted in parentheses beneath Lampe's signature, with a notation to "see attached card." Booth returned the completed signature card and the bank stapled it to Lampe's signature card. Both signature cards stated that "[t]his account shall be governed by applicable banking laws, customs and Clearing House regulations . . . ."

In its operations manual, the bank specifically required that if there were two executors for an estate, the signatures of both executors were ordinarily necessary for any withdrawal.[1] To implement this requirement, such accounts were to be "flagged" by placing a stamp on each signature card indicating that more than one signature was needed.[2] If two signatures were not to be required, the bank's legal department was to be consulted. The manual also directed that new accounts be reviewed by a supervisory officer to assure that the correct procedure had been followed.

Notwithstanding these directives, no cautionary notation was placed on the signature cards for the McNaghten estate to alert bank officials that

[1] "Executors, Administrators, Guardians, and Conservators—Obtain for your file a certified copy of the letters appointing an executor, administrator, guardian, or conservator, who wishes to open a new account. Ordinarily, you should not accept the appointment of an agent to act for these parties or allow two joint executors or administrators to act individually. When you think an exception would be in order, consult the Legal Department. If there are more than two executors or administrators appointed in California, a majority may act. . . ."

[2] "15. NUMBER OF SIGNATURES REQUIRED
"Impress the stamp 'Requires _____ Signatures' on the signature cards and check file signature cards of all accounts that require more than one signature on checks. If a specific combination of signatures is required, note it in red under the heading."

both signatures were necessary. Further, there was no evidence that appellant's legal department was consulted as required by the bank's operations manual.

Between August 1966 and October 1970, Lampe withdrew hundreds of thousands of dollars from the estate account with checks bearing only his signature. During this time, he misappropriated almost $250,000, personally investing it in a mining venture. An additional $34,000 was improperly distributed to one of the decedent's heirs without prior court approval.

Booth did not discover these misappropriations since the bank sent the cancelled checks and statements only to Lampe. Further, Lampe was able to manipulate the estate's financial records and successfully conceal the defalcations from the attorneys who prepared the estate's accountings. However, in October 1970 the mining venture failed and Lampe was forced to admit the unauthorized withdrawals. This action was promptly filed against the bank by co-executor Booth.[3]

At a court trial, the bank was found liable on three separate grounds for the loss represented by each improper withdrawal from the estate account. The court found the failure of the bank to require the signatures of both co-executors on each withdrawal from the estate checking account breached the bank's common law duty to use reasonable care in its conduct with its depositors. Probate Code section 570 was also held to require both signatures to effect withdrawals.[4] Finally, the court found that the bank breached its deposit contract with the estate since that contract incorporated all "applicable banking . . . customs . . ." and custom required the signatures of both co-executors for withdrawals.

[3]The assets of the McNaghten estate, including all rights in the action against the bank, were distributed after that action was initiated. Subsequently, William M. Bullis and Leroy B. Taft, Jr., as trustees of testamentary trusts, and W. H. Booth, Jr. and Malcolm Patrick Booth, as successors to Ann McNaghten Booth's distributive interest, were substituted as plaintiffs in this action.

[4]Probate Code section 570 provides: "When two or more executors or administrators have been appointed and one or more are absent from the state, or legally disqualified from serving, the act of the other or others shall be effectual for all purposes; if upon any hearing it shall appear that one or more of the executors or administrators were absent from the state or legally disqualified from serving, the court may so find in its order or judgment and such finding shall be conclusive of the authority of those acting. When there are more than two executors or administrators, the act of a majority is valid."

Since respondents' suit was timely filed under Code of Civil Procedure section 348,[5] damages were awarded in the amount of the unauthorized withdrawals.[6] The court also awarded prejudgment interest under Civil Code sections 3287, subdivision (a), and 3288 on each unauthorized withdrawal from the date of the withdrawal.[7] The bank appeals from this judgment for $317,008.35.[8]

## II

The trial court found that appellant breached its common law duty to act with reasonable care when it permitted Lampe to withdraw funds from the estate account without Booth's signature. Appellant clearly had a duty to act with reasonable care in its transactions with its depositors, including the McNaghten estate. (See, e.g., *Pac. Coast Cheese, Inc. v. Sec. First Nat. Bk.* (1955) 45 Cal.2d 75, 79 [286 P.2d 353]; *Basch v. Bank of America* (1943) 22 Cal.2d 316, 321 [139 P.2d 1]; *Barclay Kitchen, Inc. v. California Bank* (1962) 208 Cal.App.2d 347 [25 Cal.Rptr. 383].) This court must decide whether the trial court correctly determined that a bank acting with reasonable care would have required both signatures to effect withdrawals from the estate's account.

The trial court's determination that appellant did not act in accordance with the applicable standard of care, including implicit findings on the ". . . questions of causality, foreseeability and reasonableness . . . ," was a finding of fact. (*Ewing v. Cloverleaf Bowl* (1978) 20 Cal.3d 389, 399 [143 Cal.Rptr. 13, 572 P.2d 1155]; *Acosta v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 19, 27 [84 Cal.Rptr. 184, 465 P.2d 72].) Consequently, : this court's review is limited to determining whether "there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trial court]." (*Weirum v. RKO*

[5]Code of Civil Procedure section 348 provides: "To actions brought to recover money or other property deposited with any bank . . . there is no limitation."

[6]The parties stipulated which withdrawals did not satisfy legitimate estate expenses.

[7]Civil Code section 3287, subdivision (a) provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ."

Civil Code section 3288 provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."

[8]The bank had cross-complained against Lampe for indemnification. The bank and Lampe subsequently agreed on the extent of Lampe's liability if the bank were held liable. Judgment in the amount of $280,277.93 was entered for the bank. Lampe has not appealed from that judgment.

*General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]. See *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

■ The standard of care required in a particular circumstance may be based on a statute (see, e.g., Evid. Code, § 669) or the custom and practice in the relevant community. (*Perumean* v. *Wills* (1937) 8 Cal.2d 578, 583 [67 P.2d 96]; see 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 498, pp. 2764-2765 and cases cited.) While the custom in the community does not necessarily establish how a reasonable person must act, it is evidence to be considered in determining the proper standard of care. ■ ■■■ (*Polk* v. *City of Los Angeles* (1945) 26 Cal.2d 519, 531-532 [159 P.2d 931]; Prosser, Torts (4th ed. 1971) § 33, pp. 166-168; Rest.2d Torts, § 295A.)[9]

■ Evidence of the custom and practice in the banking industry of the number of signatures required for co-executors to withdraw funds from an estate checking account was presented at trial. Testimony as to the practice of some of the state's largest banks and numerous local banks in the Los Angeles area was presented. In each case, the bank required two signatures to withdraw funds.

Appellant's operations manual, which was regarded as a "bible," also required two signatures for withdrawals. (See fn. 1, *ante.*) To ensure that this procedure was uniformly followed, the manual required that a cautionary notation be stamped on each signature card and that each new account be reviewed by a supervisory bank officer. (See fn. 2, *ante.*) Exceptions were to be made only after consulting appellant's legal department. One of appellant's employees testified that these procedures were generally followed.

---

[9]Section 4103, subdivision (3), of the California Uniform Commercial Code provides that ". . . action or nonaction [by a bank] consistent . . . with a general banking usage not disapproved by this division, prima facie constitutes the exercise of ordinary care." (See *Luckehe* v. *First Nat. Bk. of Marysville* (1924) 193 Cal. 184, 189-190 [223 P. 547].) Conversely, the failure of a bank to act in accordance with an accepted banking practice suggests the absence of due care.

"The term 'general banking usage' is not defined but should be taken to mean a general usage common to banks in the area concerned. [See Cal. U. Com. Code, § 1205, subd. (2).] Where the adjective 'general' is used, the intention is to require a usage broader than a mere practice between two or three banks but it is not intended to require anything as broad as a country-wide usage. A usage followed generally throughout a state, a substantial portion of a state, a metropolitan area or the like would certainly be sufficient." (Cal. U. Com. Code, § 4103, Official Coms. to U. Com. Code, com. 4.)

The letters testamentary presented to appellant by Lampe identified both Booth and Lampe as the co-executors of the McNaghten estate. Each co-executor completed a signature card, which appellant stapled together and retained. The bank's legal department was not consulted about deviating from the prescribed procedure for withdrawals. Nevertheless, neither Lampe's nor Booth's signature card was stamped to alert bank personnel that both signatures were required for withdrawals. This clear deviation from appellant's own written procedures and accepted practice permitted funds to be withdrawn with a single signature.

The trial court also took judicial notice of Probate Code section 570 in determining how a reasonable bank would handle an estate account administered by two co-executors. (See fn. 4, *ante.*) ▆ Probate Code section 570 provides that one of two co-executors may act alone *only* if the other co-executor is absent from the state or legally disqualified from acting. By expressly providing that unilateral action is effective only in those limited circumstances, the statute clearly implies that action under any other circumstance must be undertaken jointly.[10] This interpretation of section 570 has been implicitly assumed in a number of decisions by this court and has been approved by leading commentators. (See, e.g., *Winder* v. *Winder* (1941) 18 Cal.2d 123, 125 [114 P.2d 347, 144 A.L.R. 935]; *Wheeler* v. *Bolton* (1880) 54 Cal. 302, 306; 1 Goddard, Cal. Probate Court Practice (3d ed. 1977) § 663, p. 571; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 318, p. 5803; 2 Bancroft, Probate Practice (2d ed. 1950) § 376, p. 382.)[11]

[10]Appellant asserts one co-executor may nevertheless delegate authority to the other co-executor. The predecessor to section 570, former Code of Civil Procedure section 1355, permitted written delegations of authority between co-executors: ". . . the act of one [co-executor] alone shall be effectual, if the other has given his co-executor . . . authority, in writing, to act for both . . . ." (Former Code Civ. Proc., § 1355, repealed Stats. 1931, ch. 281, § 1700, p. 687.) When section 570 was enacted in 1931, the Legislature struck the provision permitting written delegations of authority. (Stats. 1931, ch. 281, § 570, p. 617; see 1 Sen. J. (1931 Reg. Sess.) p. 907 (Mar. 13, 1931).) If the Legislature had sought to expand the circumstances permitting unilateral action to include oral, as well as written delegations of authority, the Legislature would have omitted only the words "in writing," when former section 1355 was reenacted as section 570. Since the Legislature eliminated the entire clause (see fn. 4, *ante*), the only reasonable interpretation of section 570 is that delegations of authority between co-executors—whether written or oral—are no longer permitted.

[11]Appellant relies on several decisions which assume or tersely mention a co-executor's ability to act unilaterally. (E.g., *In re Osborn* (1890) 87 Cal. 1 [25 P. 157]; *California Pacific Title & Trust Co.* v. *Crocker First Nat. Bk.* (1933) 131 Cal.App. 487 [21 P.2d 475]; *Hewlett* v. *Beede* (1905) 2 Cal.App. 561 [83 P. 1086].) However, each of those decisions involved events which occurred when written delegations of authority were expressly permitted by statute (see fn. 10, *ante*; Stats. 1861, ch. 534, § 16, p. 631), prior to the enactment of Probate Code section 570. Accordingly, those decisions do not support

■ Based on the evidence of the banking industry's custom and appellant's adopted procedures and practice, there was substantial evidence to support the trial court's finding that appellant's failure to require the signatures of both co-executors on withdrawals fell below the standard of care owed to the estate.

Appellant contends that it did not act negligently since its conduct was authorized under Financial Code sections 852 and 953.[12] In *Blackmon* v. *Hale* (1970) 1 Cal.3d 548 [83 Cal.Rptr. 194, 463 P.2d 418], this court stated: "The bank is authorized to honor withdrawals from an account on the signatures authorized by the signature card, which serves as a contract between the depositor and the bank for the handling of the account. So

appellant's proffered construction of section 570 with its significantly different language.

Appellant also relies on *U-Tex Oil Co.* v. *Pauley* (1962) 209 Cal.App.2d 88 [25 Cal.Rptr. 790]. In discussing plaintiff's action to quiet title and for breach of lease, the Court of Appeal noted, without citation or further discussion, that a co-executor could unilaterally perform acts "involving protection of the estate." (*Id.,* at p. 99.) That observation, even if accurate in some contexts, is inapplicable to the present case because Lampe's dispersal of hundreds of thousands of dollars of the estate's funds was the antithesis of protective conduct. Further, the court concluded that one co-executor acted *improperly* in transferring possession of estate property without the concurrence of the other executor. (*Id.,* at p. 100.)

[12]Section 852 of the Financial Code provides:

"When a deposit is made in a bank in the names of two or more persons, whether minor or adult, in such form that the moneys in the account are payable to the survivor or survivors then such deposit and all additions thereto shall be the property of such persons as joint tenants. The moneys in such account may be paid to or on the order of any one of such persons during their lifetimes or to or on the order of any one of the survivors of them after the death of any one or more of them. By written instructions given to the bank by the depositor or depositors, the signatures of more than one of such persons during their lifetimes or of more than one of the survivors after the death of any one of them may be required on any check, receipt, or withdrawal order in which case the bank shall pay the moneys in the account only in accordance with such instructions but no such instructions shall limit the right of the survivor or survivors to receive the moneys in the account.

"Payment of all or any of the moneys in such account as provided in the preceding paragraph of this section shall discharge the bank from liability with respect to the moneys so paid, prior to receipt by the particular office or branch office of the bank where such account is carried of a written notice from any one of them directing the bank not to permit withdrawals in accordance with the terms of the account or the instructions. After receipt of such notice, a bank may refuse, without liability, to honor any check, receipt, or withdrawal order on the account pending determination of the rights of the parties."

Section 953 of the Financial Code provides: "When the depositor of a commercial or savings account has authorized any person to make withdrawals from the account, the bank, in the absence of written notice otherwise, may assume that any check, receipt, or order of withdrawal drawn by such person in the authorized form or manner, including checks drawn to his personal order and withdrawal orders payable to him personally, was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person."

long as the checks drawn on the account are signed in conformity with the signature card, and absent any knowledge of a misappropriation, the bank is free from liability for honoring a check drawn in breach of trust." (*Id.,* at p. 556.) Appellant argues it is not liable for the estate's loss since it did not know of Lampe's misappropriations and nothing prohibited single signature withdrawals.

■ A bank is immune from liability under *Blackmon* only if it acted properly in opening the account. However, appellant was negligent in failing to indicate in some effective manner that withdrawals would not be honored unless signed by both co-executors. Therefore, permitting withdrawals in accordance with the signature cards does not free appellant from liability.

While Lampe's intentionally tortious conduct caused the estate's loss, his actions cannot insulate appellant from liability for its negligent conduct. ■ A person is liable for any injury proximately or substantially caused by his negligent conduct, even if a third person's conduct directly precipitates the injury. (*Willis* v. *Gordon* (1978) 20 Cal.3d 629, 635 [143 Cal.Rptr. 723, 574 P.2d 794].) "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, *intentionally tortious,* or *criminal* does not prevent the actor from being liable for harm caused thereby." (Rest.2d Torts, § 449, italics added; *Landeros* v. *Flood* (1976) 17 Cal.3d 399, 411 [131 Cal.Rptr. 69, 551 P.2d 389]. See *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at p. 47; *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 769-770 [91 Cal.Rptr. 745, 478 P.2d 465].)

The risk that one co-executor would act alone and make unauthorized withdrawals was significant in establishing the standard of care. The deviation from this standard allowed that very risk to become a reality in this case. Therefore, the occurrence of this foreseeable act does not break the chain of legal causation which holds appellant liable for the estate's loss. (See *Barclay Kitchen, Inc.* v. *California Bank, supra,* 208 Cal.App.2d at pp. 355-356.)

Appellant asserts that the imposition of liability would punish appellant for its failure "to control the conduct of another," i.e., Lampe. (See *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) This contention

overlooks the fact that the trial court merely reaffirmed the obvious proposition that appellant owed a duty of due care to its depositors. Appellant was held liable for the estate's loss because *its* conduct, in opening and maintaining the estate's account, did not meet the standard of reasonable care expected of a bank. Its negligent conduct resulted in a reasonably foreseeable injury. Thus, liability was based on appellant's own negligence, not on a breach of any duty to control Lampe. (Cf. *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at pp. 48-49.)

■ Next, appellant argues that respondents' suit was barred by the statute of limitations. However, Code of Civil Procedure section 348 provides there is no limitation on the time for initiating an action "brought to recover money . . . deposited with any bank . . . ." (See fn. 5, *ante.*) On its face, section 348 permits a person to file suit at any time to recover money deposited in a bank. (See *Union Tool Co.* v. *Farmers etc. Nat. Bk.* (1923) 192 Cal. 40, 52 [218 P. 424, 28 A.L.R. 1417]; *King* v. *Mortimer* (1948) 83 Cal.App.2d 153, 160-161 [188 P.2d 502].)

Appellant contends that section 348 applies only to actions based on a breach of a deposit contract. However, section 348 does not limit the kinds of "actions" subject to its provisions, unlike many other statutes of limitations. (See, e.g., Code Civ. Proc., §§ 337, subd. 1 and 339, subd. 1.) "There is nothing in the language of section 348 which distinguishes between actions ex delicto and ex contractu. Indeed, it may be assumed that the majority of cases involving suits by depositors to recover from the bank or other deposit company arise by reason of some fraud or breach of duty rather than arising solely on the contract of deposit. To give a more narrow interpretation of this section would be to deprive it of most of its effect." (*King* v. *Mortimer, supra,* 83 Cal.App.2d at p. 161.)[13] Therefore, respondents' action for damages based on appellant's negligence was not barred by the statute of limitations.

---

[13]This construction of section 348 is reinforced by the exclusion from section 348 of actions based on the payment of a forged or raised check. (Code Civ. Proc., § 340, subd. 3.) Nearly half a century ago, the Court of Appeal held that by removing only actions based on a forged or raised check from the ambit of section 348, the Legislature had implicitly assigned all other actions for the recovery of funds deposited with a bank to the general provisions of section 348. "[T]he rule of statutory construction that an express exception is not to be extended beyond the fair import of its terms [citations], applies in considering the effect of section 340, subdivision 3, as an exception to the general rule laid down by section 348 and it must be presumed that the legislature in enacting the amendment to section 340 intended to create no exception other than that therein in terms specified [citation], since an express exception excludes all others." (*Merchants Nat. Bk.* v. *Continental Nat. Bk.* (1929) 98 Cal.App. 523, 532 [277 P. 354]; see *Glassell Dev. Co.* v. *Citizens' Nat. Bk.* (1923) 191 Cal. 375, 386 [216 P. 1012, 28 A.L.R. 1427].) The

Next, this court must decide whether the trial court abused its discretion when it awarded prejudgment interest. Relying on Civil Code section 3288, the trial court awarded respondents prejudgment interest on each unauthorized withdrawal from the date of the withdrawal.[14] (See fn. 7, *ante.*) Appellant concedes respondents are entitled to prejudgment interest from the effective date of the filing of the complaint until the entry of judgment.[15] However, appellant challenges any award of prejudgment interest calculated from the date of withdrawal rather than from the date the complaint was filed.

Under Civil Code section 3288, the trier of fact may award prejudgment interest "[i]n an action for the breach of an obligation not arising from contract, *and* in every case of oppression, fraud, or malice . . . ." (Italics added.)[16] It is clear from this language that a party does not have to prove both a breach of a noncontractual obligation *and* oppression, fraud or malice. (See *King* v. *Southern Pacific Co.* (1895) 109 Cal. 96, 99 [41 P. 786]; *Nordahl* v. *Department of Real Estate, supra,* 48 Cal.App.3d at p. 665; *Ruth* v. *Lytton Sav. & Loan Assn.* (1969) 272 Cal.App.2d 24, 26 [76 Cal.Rptr. 926]; *Howe* v. *City Title Ins. Co.* (1967) 255 Cal.App.2d 85, 88 [63 Cal.Rptr. 119].)[17] Even if plaintiff's damages are not liquidated, prejudgment interest may be awarded. (*Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 106 [98 Cal.Rptr. 293,

---

Legislature has not amended section 348 since that judicial construction.

The cases relied upon by appellant are inapplicable because in each the court found the suit was governed by Code of Civil Procedure section 340, subdivision 3 (see, e.g., *Union Tool Co.* v. *Farmers etc. Nat. Bk., supra,* 192 Cal. 40) or was not brought by a *depositor* seeking *recovery* of funds deposited with a bank (see, e.g., *La Vista Cemetery Assn.* v. *American Sav. & Loan Assn.* (1970) 12 Cal.App.3d 365 [90 Cal.Rptr. 722]; *Neustadt* v. *Skernswell* (1955) 133 Cal.App.2d 163 [283 P.2d 787]).

[14]The court adopted withdrawal dates based on a stipulation of the parties.

[15]While the complaint in this action was filed on December 22, 1970, the parties stipulated that the effective date of the filing of the complaint would be November 23, 1970.

[16]While section 3288 only grants such authority to the "jury," the trial court, when acting as the trier of fact, may award prejudgment interest under this section. (See, e.g., *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 665 [121 Cal.Rptr. 794]; *Nathanson* v. *Murphy* (1955) 132 Cal.App.2d 363, 373 [282 P.2d 174].)

[17]If the Legislature had intended to limit section 3288 only to suits which involved a breach of a noncontractual obligation and oppression, fraud or malice, it would have adopted a provision like that found in Civil Code section 3294: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice . . ." exemplary damages may be awarded. Both sections were based on Field's draft of the New York Civil Code and were enacted simultaneously in 1872. (See also *Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1064 [98 Cal.Rptr. 153]; *Nathanson* v. *Murphy* (1957) 147 Cal.App.2d 462, 467 [305 P.2d 710]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 881, p. 3168.)

490 P.2d 805]; *Gherman* v. *Colburn* (1977) 72 Cal.App.3d 544, 587 [140 Cal.Rptr. 330].)[18]

 Respondents recovered damages because appellant breached its common law duty. Since this action was within the purview of section 3288, the decision to award prejudgment interest may not be overturned unless the trial court abused its discretion. A trial court's exercise of discretion will be upheld if it is based on a "reasoned judgment" and complies with the ". . . legal principles and policies appropriate to the particular matter at issue." (*People* v. *Russel* (1968) 69 Cal.2d 187, 195 [70 Cal.Rptr. 210, 443 P.2d 794]; accord *Esgro Central, Inc.* v. *General Ins. Co., supra,* 20 Cal.App.3d at p. 1064.)

 Prejudgment interest is awarded to compensate a party for the loss of the use of his or her property. (*Nordahl* v. *Department of Real Estate, supra,* 48 Cal.App.3d at p. 665.) In the present case, the estate was deprived of the use of a quarter of a million dollars for several years due to appellant's negligence. The date on which the estate suffered the loss represented by each unauthorized withdrawal was readily ascertainable and stipulated to by the parties. Under these circumstances, the trial court's award of prejudgment interest to compensate respondents for the negligent loss of funds from the estate's checking account did not constitute an abuse of discretion. (Cf. *Brunson* v. *Babb* (1956) 145 Cal.App.2d 214, 230 [302 P.2d 647].)

Respondents' motion to assess penalties against appellant on the ground that the appeal has been taken solely for the purpose of delay is denied. (See Cal. Rules of Court, rule 26.)

The judgment is affirmed.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Manuel, J., concurred.

---

[18] *Nicholson-Brown Inc.* v. *City of San Jose* (1976) 62 Cal.App.3d 526 [133 Cal.Rptr. 159] and *Dixon Mobile Homes, Inc.* v. *Walters* (1975) 48 Cal.App.3d 964 [122 Cal.Rptr. 202], are disapproved to the extent they are inconsistent with this opinion.