Filed 2/25/21  P. v. Whisenant CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WARREN HANSFORD WHISENANT,<br><br>     Defendant and Appellant. | A159288<br><br>(Napa County<br>Super. Ct. No. CR183267) |

Defendant Warren Whisenant pleaded no contest to stalking his estranged wife and making criminal threats against her boyfriend and was sentenced to two years in state prison.  After his release, the trial court ordered defendant to pay restitution to the California Victim Compensation Board in the amount of $8,064, with interest.  On appeal, defendant contends the court erred by ordering him to pay victim restitution without first conducting an ability to pay hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  Defendant further contends that even if this court does not remand for a *Dueñas* hearing, the restitution order should be corrected to conform to the trial court's oral pronouncement that interest would run from the date of the restitution order, not the date of sentencing. We remand the matter to the trial court with directions to amend the

1

restitution order to reflect the correct date on which interest began to run and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We limit our recitation of facts to those necessary to our decision. In June 2017, defendant was charged by information with felony stalking of Jennifer W. while subject to a restraining order (Pen. Code, § 646.9, subd. (b)[1]; count one); felony stalking of Jennifer W. (§ 646.9, subd. (a); count two); felony stalking of Joseph S. (§ 646.9, subd. (a); count three); felony criminal threats against Joseph S. (§ 422; count four); and unlawful firearm activity (§ 29825, subd. (b); count five).

Defendant pleaded no contest to counts one and four, and the remaining counts were dismissed. In September 2017, the trial court sentenced defendant to two years in state prison.

After completing his prison term, defendant was released from custody. In September 2019, the People filed a request to impose restitution payable to the Victim Compensation Board in the amount of $8,064 as reimbursement for therapy and counseling services provided to Jennifer W. and her children. (§ 1202.4, subd. (f).)

At the restitution hearing held on December 17, 2019, defense counsel asked the trial court "to consider, just for fairness, for due process grounds, for equal protection grounds, not to impose the amount." Additionally, defense counsel objected to defendant having to pay interest from the date of sentencing.

The trial court ordered defendant to pay restitution in the amount requested and stated it was "going to order the interest at 10 percent a year from today's date." However, in the court's order for victim restitution

---

[1] Further statutory references are to the Penal Code.

2

(Judicial Council form CV-110) filed on December 24, 2019, the checked boxes on the form indicated that defendant was ordered to pay interest at 10 percent per year *from the date of sentencing.*

Defendant appealed.

## DISCUSSION

In *Dueñas*, the Court of Appeal held that due process of law requires an ability to pay hearing and a determination of a defendant's present ability to pay before the trial court imposes a court operations assessment under section 1465.8 and a court facilities assessment under Government Code section 70373, and executes a restitution fine under section 1202.4, subdivision (b).[2] (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1169.)

Observing that the facilities and operations assessments were not "intended to be punitive in nature" but were "to raise funds for California courts" (*Dueñas, supra*, 30 Cal.App.5th at p. 1165), *Dueñas* concluded that imposing "unpayable fines on indigent defendants" is "unfair" and "serves no rational purpose" because doing so "does not accomplish the goal of collecting money" (*id.* at p. 1167). Rather, imposing these assessments on an indigent defendant is tantamount to "inflict[ing] additional punishment." (*Id.* at p. 1166.)

*Dueñas* further observed that a restitution fine is "intended to be, and is recognized as, as additional punishment for a crime," and that settled law holds " 'a punitive award must be considered in light of the defendant's financial condition.' " (*Dueñas, supra*, 30 Cal.App.5th at pp. 1169–1170.) According to *Dueñas*, imposing this additional punishment on an indigent

---

[2]     Section 1202.4, subdivision (b), requires a court to impose a restitution fine unless there are "compelling and extraordinary reasons" not to do so. "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense." (*Id.*, subd. (b)(1).)

defendant is fundamentally unfair because an unsatisfied restitution obligation necessarily deprives the defendant of the opportunity to obtain mandatory expungement of the conviction under section 1203.4, subdivision (a)(1). (*Dueñas*, at pp. 1169–1171.)[3]

The instant case is not concerned with the type of restitution fine (§ 1202.4, subd. (b)) that *Dueñas* addressed; rather, it involves an order of direct victim restitution under section 1202.4, subdivision (f).[4] As relevant here, *Dueñas* expressly left unanswered the question of whether due process requires a hearing and determination of ability to pay prior to execution of direct victim restitution. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1169–1170 [noting that direct victim restitution had not been ordered]; see also *Kopp, supra*, 38 Cal.App.5th at p. 94, fn. 22 ["[b]ecause victim restitution is a civil remedy, we do not address that restitution"].)

---

[3] Several courts have criticized *Dueñas* and held that due process principles do not require determination of a defendant's ability to pay before imposing fines, fees, and assessments. (See, e.g., *People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 860 (*Pack-Ramirez*); *People v. Allen* (2019) 41 Cal.App.5th 312, 326–329 (*Allen*); *People v. Kingston* (2019) 41 Cal.App.5th 272, 279–282; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326–329, review granted Nov. 26, 2019, S258946.) Other courts have held that constitutional challenges to the imposition of fines, fees and/or assessments should be based on the excessive fines clause of the Eighth Amendment. (See, e.g., *People v. Cowan* (2020) 47 Cal.App.5th 32, 42, review granted Jun. 17, 2020, S261952; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96–97 (*Kopp*) [remanding for ability to pay hearing on assessments but analyzing restitution fine under Eighth Amendment], review granted Nov. 13, 2019, S257844.)

[4] Section 1202.4, subdivision (f), provides that direct victim restitution may include, among other things, the value of stolen or damaged property, medical expenses, mental health counseling expenses, lost wages and profits, noneconomic losses, and "[i]nterest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court. . . ." (§ 1202.4, subd. (f)(3)(A)–(C), (G).)

That question, however, was answered by the Court of Appeal in *People v. Evans* (2019) 39 Cal.App.5th 771 (*Evans*), which declined to extend the rule of *Dueñas* to victim restitution. *Evans* based its holding on the fundamental differences between restitution fines and direct victim restitution. "Restitution fines under subdivision (b) of section 1202.4 'are set at the discretion of the court in an amount commensurate with the seriousness of the offense and within a range set by statute,' and 'are not paid to the victim of the crime.' [Citation.] The money collected in restitution fines goes directly into state coffers." (*Evans*, at p. 776.)

"The purpose of victim restitution, on the other hand, is neither to raise funds nor to punish a defendant; it 'is to reimburse the victim for economic losses caused by the defendant's criminal conduct, i.e., to make the victim reasonably whole.' [Citation.] Section 1202.4 implements the state constitutional mandate that 'all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer.' [Citations.] While a victim restitution order may also serve the purposes of rehabilitation and deterrence [citations], its measure is the harm suffered by crime victims and its primary effect is to compensate those victims. This effect is reinforced by the requirement that all moneys collected from a defendant be first applied to victim restitution." (*Evans*, *supra*, 39 Cal.App.5th at p. 777.) Noting that victim restitution is enforceable as a civil judgment, and that the wealth of a defendant in a civil action is irrelevant to liability, *Evans* concluded that a criminal defendant's ability to pay victim restitution is not a proper factor to consider in setting a restitution award under section 1202.4, subdivision (f). (*Evans*, at pp. 776–777.)

In *Evans*, it made no difference that the victims had already received compensation through the Victim Compensation Board. As the court explained, " 'when direct victim restitution has been satisfied by the victim's application to the victim compensation program, the amounts a defendant is ordered to pay as direct victim restitution are instead paid to the Restitution Fund.' [Citation.] We see no reason that defendant should receive a windfall—and the Restitution Fund should suffer a loss—simply because the victims exercised their right to apply to the California Victim Compensation Board rather than waiting for the victim restitution order." (*Evans*, *supra*, 39 Cal.App.5th at p. 778.)

Several courts have adopted *Evans*'s analysis and conclusion that *Dueñas* does not apply to victim restitution. (*Pack-Ramirez*, *supra*, 56 Cal.App.5th at p. 859; *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338 (*Abrahamian*); *Allen*, *supra*, 41 Cal.App.5th at p. 325.) We do likewise and find unpersuasive defendant's attempts to demonstrate that *Evans* was incorrectly decided.

To wit, defendant argues that *Evans*'s analysis was too simplistic. Specifically, he contends, when the government compensates a crime victim and then obtains a restitution order against the defendant, this is not the same as a creditor stepping into the shoes of another, because the government has an interest in the defendant's successful reintegration into society. In support, defendant relies on portions of *Dueñas* discussing the financial burdens of court-imposed debts on indigent defendants and the potential for the resulting financial insecurity to lead to recidivism. Once again, however, *Dueñas* expressly declined to address victim restitution (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169), and *Evans* appropriately recognized that victim restitution is "fundamentally different" from the fines

6

and assessments at issue in *Dueñas*. (*Evans*, *supra*, 39 Cal.App.5th at p. 776.)

We echo that important distinction here. Victim restitution introduces a competing concern that is not present in the case of facilities and operations assessments or restitution fines: a victim's constitutional right to restitution is one which "cannot be bargained away or limited." (*People v. Gross* (2015) 238 Cal.App.4th 1313, 1318.) Victim restitution serves the distinct purpose of compensating crime victims for their losses (*Evans*, *supra*, 39 Cal.App.5th at p. 777; *People v. Holman* (2013) 214 Cal.App.4th 1438, 1451–1452) and furthers the "unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b), par. (13)(A); § 1202.4, subd. (f) [requiring court to order "full restitution"].) *Evans* found no case, nor have we, authorizing the waiver or reduction of constitutionally mandated victim restitution based on the rule of *Dueñas*.

Defendant attempts to liken the restitution order here to the revenue-generating assessments at issue in *Dueñas* by arguing that reimbursement to the Victim Compensation Board at 10 percent interest is a "cash cow" for the state. This claim is wholly unsupported. Defendant provides no factual or legal basis to conclude that such interest is revenue-generating (see *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [prejudgment interest is awarded to compensate for loss of use of money or property]) or that it fundamentally alters the compensatory nature of victim restitution.[5]

---

[5]    We are not required to consider the particular argument, raised by defendant for the first time at oral argument, that the *Dueñas* rule should apply just to the interest portion of the restitution award when the Victim Compensation Board has stepped in to reimburse the victim. (*People v. Pena*

7

For these reasons, we join the courts concluding that the rule of *Dueñas* does not apply to victim restitution under section 1202.4, subdivision (f). (E.g., *Pack-Ramirez, supra,* 56 Cal.App.5th at p. 859; *Abrahamian, supra,* 45 Cal.App.5th at p. 338; *Allen, supra,* 41 Cal.App.5th at p. 325; *Evans, supra,* 39 Cal.App.5th at p. 777.)

Finally, we address defendant's secondary contention that the restitution order must be corrected regarding the start date that interest is to run. The December 24, 2019, restitution order expressly states that ten percent interest shall run from the date of "sentencing." That date appears ambiguous as to whether it refers to the date that defendant was initially sentenced to prison (September 22, 2017) or the date that victim restitution was imposed (December 17, 2019). Assuming the former, the restitution order contradicts the trial court's oral pronouncement at the December 17, 2019, hearing as reflected in the reporter's transcript and in the court minutes stating that interest would run from "today's date."

Generally, a trial court's oral pronouncement controls over a contrary writing in the record (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2), and the People concede here that the requested correction should be made. Accordingly, we direct the trial court to correct this apparent clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186–187.)

---

(2004) 32 Cal.4th 389, 403.) In any event, *Evans* concluded that whether a victim applies to the Victim Compensation Board or waits for a restitution order should make no difference in the ultimate amount a defendant is ordered to pay as direct victim restitution. (*Evans, supra,* 39 Cal.App.5th at p. 778.)

**DISPOSITION**

We remand the matter to the trial court with directions to correct the restitution order to reflect that ten percent interest shall run from December 17, 2019.  Otherwise, the judgment is affirmed.

_____
Fujisaki, Acting P.J.

WE CONCUR:


_____
Jackson, J.


_____
Wiseman, J.*


A159288

_____
*       Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.