[Civ. No. 111.   Third Appellate District.—December 29, 1905.]

## SAMUEL HEWLETT, Appellant, v. W. M. S. BEEDE et al., Respondents.

CONTRIBUTION—DEFICIT OF COEXECUTOR—SEPARATE BONDS—ABSENCE OF LIABILITY OF SURETIES.—Whatever right of contribution may exist in favor of one executor against another, there is no joint liability or obligation to contribute between the sureties on the separate bonds of two coexecutors; and one of two coexecutors, who with his sureties has been compelled to pay the deficit of the other who is deceased, cannot maintain an individual action for contribution against the sureties on the bond of the deceased executor, whose obligation was restricted to answering to the heirs for their

2 Cal. App.—36

principal's breach of duty, and not to answer for the breach of the private obligation of their principal to the principal coexecutor on a separate bond.

ID.—RIGHTS OF SURETIES.—Sureties are entitled to stand upon the precise terms of their contract; and their liability upon a bond cannot be extended by implication beyond its express terms.

ID.—OBLIGATION OF ONE COEXECUTOR TO HEIR FOR WASTE BY ANOTHER— NEGLIGENCE — JOINT AND SEVERAL LIABILITY. — Coexecutors are jointly and severally liable to account to the heirs for the entire estate, and it is wholly immaterial that one of them allowed another to handle the money of the estate, because he was a lawyer, and knew more about the business. The other executor could still be jointly and severally liable to an heir if through his inexcusable neglect he permitted the other to lose the estate.

ID.—RIGHT AND DUTY OF SURVIVING COEXECUTOR—COLLECTION OF ASSETS—ACTION ON BOND OF DECEASED EXECUTOR.—Where a deceased executor had received the funds of the estate, and could not account for them, it was the immediate right and duty of the surviving coexecutor to collect the assets, and to bring an action, as such, on the bond of the deceased coexecutor for the recovery of said funds for the benefit of the estate.

ID.—COSTS OF ACTION BY HEIRS NOT RECOVERABLE.—In no event could the surviving coexecutor, in any action against the sureties on the bond of the deceased coexecutor, recover the costs of an action brought by an heir on his official bond to recover the amount of the deficit.

ID.—ACCRUAL OF RIGHT OF ACTION—STATUTE OF LIMITATIONS.—The right of action in favor of the surviving executor to recover the estate for the heir on the bond of the deceased executor accrued immediately after the default, or at least upon the death of the defaulting executor, and where he died and the demand by the heir upon the surviving executor was made more than four years before the present action was brought, the statute of limitations was set in motion without awaiting the collection of the money by the heir, or its payment by the surviving executor, and any right of action upon the bond was barred by the provision of section 337 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. Ansel Smith, Judge.

The facts are stated in the opinion of the court.

J. B. Webster, and C. H. Fairall, for Appellant.

Nicol & Orr, for Respondents.

BUCKLES, J.—On June 23, 1893, Alonzo McCloud, a resident of San Joaquin county, California, died testate, and in due time his will was admitted to probate and the court appointed R. D. Baldwin and Samuel Hewlett, executors. Each, qualifying, gave separate bonds, each in the sum of $25,000. The sureties on the bond of R. D. Baldwin were J. D. McDougald, Joseph H. Swain, Mary A. Baldwin, Joseph Fyfe, and W. M. S. Beede; each of said sureties qualifying in the sum of $10,000. The sureties on the bond of the said Samuel Hewlett were Henry Meyers for $10,000, L. Hewlett for $10,000, G. W. Trahern for $10,000, R. S. Johnson for $10,000, G. Gianelli for $5,000, and B. Gianelli for $5,000. On November 11, 1896, a decree was made and entered settling the final account, and the said executors jointly charged themselves with a balance of cash on hand subject to distribution of $2,503.21. On or about November 24, 1896, Wayne McCloud, then a minor, by his guardian, and Bessie Logan, legatees and devisees under the will of said Alonzo McCloud, filed their petition for a partial distribution, and on January 2, 1897, the court made and entered its decree adjudging that one-half of said $2,503.21 belonged to said Wayne McCloud and Bessie Logan. The said executors then placed in the Bank of Hollister, under an agreement between them and Wayne McCloud, in their individual names, but in trust for the said Wayne McCloud, the sum of $598, which was the sum distributed to him after the payment of certain taxes. On October 5, 1897, the said executor, Baldwin, died. On December 19, 1897, the said Wayne McCloud became of age and then demanded of executor Hewlett that he order the said bank to receive and retain the money deposited therein as the money of Wayne McCloud and credit the same on his indebtedness to the bank. After this the said Bessie Logan assigned her interest to Wayne McCloud, and he thereupon made the same request and demand of said executor, Hewlett, in relation to this money, as he had of his own $598; but said Hewlett neglected to comply with such demand and did not pay the same over to said Wayne McCloud. Whereupon the said Wayne McCloud brought suit against said Hewlett, as executor, and the said sureties on his bond, for the recovery of said moneys; and on the sixth day of December, 1899, the court rendered judgment against said Hewlett and his said

sureties in favor of Wayne McCloud for the sum of $1,191, with interest on $592.60, for $50.85 costs, and that the sum of $598.40, which had been deposited in said bank in the names of Samuel Hewlett and R. D. Baldwin, be paid to the Bank of Hollister for the use of said Wayne McCloud, and that when so paid it should be credited on said judgment. Hewlett appealed to the supreme court (*McCloud* v. *Hewlett*, 135 Cal. 362, [67 Pac. 333]), and the judgment against him was affirmed. The plaintiff paid the same, amounting to $1,161.25, and, after demanding the same of the said sureties on the bond of R. D. Baldwin, brought this action to recover the same from them. The judgment was for the defendants. The appeal is from the judgment and from an order denying motion for new trial.

"Every executor and administrator is chargeable in his account with the whole of the estate of the decedent which may come into his possession." (Code Civ. Proc., sec. 1613.) "When two or more persons are appointed executors or administrators, the superior court, or a judge thereof, must require and take a separate bond from each of them." (Code Civ. Proc., sec. 1391.) In *Re Sanderson*, 74 Cal., at page 214, [15 Pac. at page 762], the court held that: "Coexecutors are not liable to each other, but each is liable to the *cestui que trust* to the full extent of the funds he received." In the case of *McCloud* v. *Hewlett*, 135 Cal. 361, [67 Pac. 333], the court held that Hewlett and his sureties were liable to McCloud, who was the *cestui que trust*. The appellant claims that the case at bar is a parallel case where an officer is required to give additional bond, and quotes section 969 of the Political Code, which reads as follows: "Whenever the sureties on either bond have been compelled to pay any sum of money on account of the principal obligor therein, they are entitled to recover, in any court of competent jurisdiction, of the sureties on the remaining bond a distributive part of the sum thus paid, in the proportion which the penalties of such bonds bear one to the other, and to the sums thus paid, respectively" —and then urges that, where there are two executors who give separate bonds, the same rule applies as to contribution of sureties on each bond, and cites section 981 of the Political Code to sustain such contention. The section reads as follows: "The provisions of this article apply to the bonds of

receivers, executors, administrators and guardians." We do not think that the rule of contribution between sureties on the original bond and those on an additional bond is intended to apply to sureties on bonds of two or more executors. The sureties on the bond of Baldwin only promised to stand good for the acts and defalcations of Baldwin, while the sureties on Hewlett's bond only promised to stand good for his defalcations and acts, and it seems to us there would, in no view which may be taken, be a joint liability between the sureties on their separate bonds, and, if no joint liability, then there could be no right of contribution by one set of sureties against the other.

It must be borne in mind that this action is one in which the plaintiff prosecutes the cause, not in his representative capacity as executor, but in his private capacity against those who were sureties on the bond of Baldwin as an executor of the McCloud will, who is· now dead. It is sought to recover from these sureties $86.75, which plaintiff's sureties paid for him in a suit by the heir, and the further sum of $300.50, claimed to have been expended by plaintiff as costs in the action the heir brought against him and his sureties. The plaintiff had repaid his sureties the $860.75, and therefore brings the suit in his own name. Whatever obligation rests upon the defendants arose upon a bond given by Baldwin, as executor. They were liable, if at all, only upon that bond, and they are entitled to stand upon the precise terms of their contract. Their liability is limited by the terms and conditions of the bond on which they are sureties, and such liability cannot be extended by implication beyond its terms. "A surety cannot be held beyond the express terms of his contract." (Civ. Code, sec. 2836; *Heinlen* v. *Beans,* 71 Cal. 295, [12 Pac. 167]; *San Luis Obispo* v. *Farnum,* 108 Cal. 562, [41 Pac. 445]; *Heidt* v. *Minor,* 89 Cal. 115, [26 Pac. 627]; *Elder* v. *Kutner,* 97 Cal. 490, [32 Pac. 653]; *County of Glenn* v. *Jones,* 146 Cal. 518, [80 Pac. 695].) So far as the principal in a bond of this kind is concerned, the obligation of the surety is to answer to the heir for his breach of duty and not for a breach of duty to any other person who may have been invested with the same character of trusts with respect to the same estate. As between Baldwin and Hewlett, the former may have become personally

liable to the latter for something the latter may have been
compelled to do which the former ought to have done. But
the defendants, as Baldwin's sureties, did not agree to an-
swer for Baldwin's private obligations to Hewlett. The ob-
ligation of the sureties as set out in the bond are: "Now,
therefore, if the said Robert D. Baldwin, as such executor,
shall faithfully execute the duties of his trust according to
law, then this obligation to be void, otherwise to remain
in full force and effect." Assume for the sake of argu-
ment that Baldwin did receive the moneys of said es-
tate, that he did not pay over, and Hewlett was compelled
to make good the amount to the heir, the sureties of Bald-
win were not bound to repay Hewlett, for they only agreed
to answer to the heir or the state of California for the
heirs. In *Hill* v. *Kemble*, 9 Cal. 72, a constable collected $185
by execution for Hill and notified Hill that the money was
ready for him. Hill said he did not need the money then and
loaned it to the constable, and he did not pay the same. Suit
was brought against a surety on the constable's bond. The
court held: "The sureties upon the official bond of an officer
are only responsible for his official acts, and not for private
debts he may contract on his individual account." It mat-
ters not that Hewlett allowed Baldwin to handle the money
of the estate because Baldwin was a lawyer and knew more
about the business. Hewlett would still be jointly and sever-
ally liable with Baldwin to the heirs if, through his inexcusa-
ble neglect, he permitted Baldwin to close the estate. (*In re
Osborn,* 87 Cal. 1, [25 Pac. 157].) The heirs recovered from
Hewlett the whole amount due them.

It is admitted by the pleadings that the "said executors
verified and filed their joint final account of their proceedings
in said estate; that the same was upon due notice given, heard,
and considered by said superior court, wherein said settle-
ment of said estate was pending and was thereupon duly al-
lowed, approved and settled by the decree of said court, which
was then and there given, made, and entered, and recorded
on the eleventh day of November, 1896"; and that said de-
cree showed the executors had in their hands the sum of
$2,503.21, which was the remainder of said estate after paying
all claims and expenses and commissions. Baldwin died
October 5, 1897, and the heir demanded his portion of the

estate of the appellant on December 19, 1897, and was refused. Hewlett continued to administer the estate after the death of his coexecutor, and all the trusts of the executorship devolved upon him, among which were to collect and safely keep the property of the estate. If Baldwin had received the funds of the estate, and had not and could not account for them, Hewlett, as the surviving executor, had the right, and it was his duty, to bring an action against the sureties on Baldwin's bond for such funds for the benefit of the estate. This right, however, was not vested in Hewlett as an individual. It was an incident of the office he held. But no effort seems to have been made to have Baldwin account for the funds, nor to collect from the sureties after his death.

The appellant had permitted Baldwin to handle the funds of the estate without any reason, further than that he was a lawyer and knew more about it. The funds being lost in part through Hewlett's negligence, as has been shown, he became jointly liable with Baldwin and also severally. The heir ignored the joint liability, as he had a right to do, and sued Hewlett without joining Baldwin's sureties, and recovered judgment, which Hewlett paid, and now Hewlett, in his individual capacity, seeks to recover from these sureties what he was compelled to pay the heir, and also $300 costs of that action. The costs in no sense could be a charge against the sureties on Baldwin's bond, for the reason that any action the appellant could have maintained would have been one as executor against his coexecutor to recover for the heir the estate lost by Baldwin, and the costs sued for here were not made in such an action, but in an action brought by the heir and against executor Hewlett. This is not an action between joint obligors, or cosureties, where the right of action would not accrue until payment had been made by one of those jointly liable; but the right of appellant here accrued at least when Baldwin died or immediately on the happening of the default. Baldwin's death occurred more than four years next prior to the commencement of this action, and the demand of the heir on Hewlett was made more than four years before the commencement of this action. If any right of action existed against these defendants as the sureties on Baldwin's bond, the statute of limitations was set in motion as soon as Hewlett, by his own action, could have made the

claim payable in spite of the sureties. Immediately upon the death of Baldwin, Hewlett, as the surviving executor, became entitled to the possession of all moneys belonging to the estate. The duty of administering the estate at once devolved upon him. He knew, or should have known, then what became of the money which had been reported by the final account to have been on hand and held jointly by the two executors. This account, sworn to by Hewlett, as well as Baldwin, had informed these defendants here that the $2,503.21 was held jointly by the executors. If it was not so held, Hewlett, the appellant, knew it. A suit by Hewlett, executor, then, against Baldwin, executor, to recover the money for the heirs would have made the sureties on Baldwin's bond, the defendants here, liable for whatever default he (Baldwin) might have made. The heirs no longer have any concern in the question whether Baldwin made default or not, for they have received the estate and the matter becomes a purely personal one between Baldwin as an individual and Hewlett as an individual. Did the right of action exist at all against the sureties, the statute of limitations had run against it, and was set in motion as soon as Hewlett, by his own act, could have made the claim payable in spite of the sureties. These defendants had nothing to do with the administration of the estate. If Hewlett saw fit to turn over all the funds of the estate to his coexecutor and to negligently suffer their use in a manner contrary to law, he should not complain when made to suffer the loss his own conduct made possible. If his confidence was misplaced, he is the one who misplaced it. It was not the act of the defendants, but the alleged misplaced confidence of one executor in the other, that has led to the asserted loss. He that places confidence should watch that it is not abused. If he neglects to do so, the maxim applies, ''Whose is the negligence, his is the loss.''

The case was brought and tried by the appellant upon the theory that the sureties on Baldwin's bond were joint obligors with sureties on Hewlett's bond. This is a mistaken idea, as we have plainly pointed out. The authorities cited by appellant are those relating to contribution by joint or co-obligors and therefore do not apply to this case. Again, appellant proceeds upon the theory that he could not have commenced the action against Baldwin until he had paid over the estate.

The all-sufficient answer is he could have sued Baldwin, in his official capacity, the moment he knew Baldwin has passed the estate out of his hands, and surely it was his duty to have sued Baldwin's sureties immediately after October 5, 1897, when Baldwin died, and at the farthest on December 19, 1897, when the heir demanded the estate. He was then the sole executor and entitled to the possession of the entire estate. In the first place, Hewlett was not responsible for any more of the estate than what came to his hands until he was negligent in letting his coexecutor keep possession of the estate after he had, by his joint account, notified the defendants that he himself held it jointly with Baldwin, and then, when Baldwin died, it was his duty to take charge of the estate, and he could not delay setting the statute of limitations running by failing to demand of Baldwin's sureties that they make good whatever default he had made to the estate. (*Harrigan* v. *Home Ins. Co.*, 128 Cal. 531, [58 Pac. 180, 61 Pac. 99].) Hewlett was not standing in the same position as a creditor. His position was that of executor representing the estate, and as to Baldwin there was no payment for him to make. His duty was to collect the estate, and the statute began to run from October 5, 1897.

For the reasons herein stated, the action, being a personal matter between Hewlett and Baldwin, cannot be maintained against the sureties of Baldwin's bond as executor. Plaintiff's cause of action is barred by the provisions of section 337 of the Code of Civil Procedure.

The judgment is affirmed.

Chipman, P. J., and McLaughlin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 29, 1906.